[No. 25450. Department One. May 3, 1935.]

MAUD THOMAS, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

*George H. Crandell* and *Kenneth Durham,* for appellant.

*The Attorney General* and *Browder Brown, Assistant,* for respondent.

MILLARD, C. J.—Frank Thomas, a coal mine employee, sustained an injury while in the course of extrahazardous employment. He died a few days later following an abdominal operation. The claim of his widow for an industrial insurance pension was rejected by the department of labor and industries. The reasons given for denial of the pension were that there was no proof of an accident during the course of employment, and that death of the claimant's husband was not the result of an injury.

A hearing before the joint board resulted in an affirmance of the order rejecting the claim. At that

[1]Reported in 44 P. (2d) 765.

hearing, seven lay witnesses and the surgeon who operated on Thomas testified on behalf of the claimant. Three witnesses testified on behalf of the department.

The claimant appealed from the decision of the joint board to the superior court. The cause was submitted upon the certified departmental record and the testimony of two investigators and four physicians called as witnesses for the department. One of the physicians, a pathologist, examined the appendix after its removal from the patient. The other three physician witnesses of the department, who apparently do not subscribe to the view that there could be a case of traumatic appendicitis, expressed as their opinion, based on a history of the case, that the accident had not occurred for a sufficient length of time prior to the operation to have caused the condition the surgeon found when he operated. The trial court stated that there was evidence in the record to show that Thomas slipped and fell, and that he then complained, stating he thought he had ruptured himself.

"The Court will hold that he did slip, and that he felt sick after slipping, and that he did not do any further work that day or the next day.

"He was taken in to Seattle to the hospital, where he was operated on, and a condition in his abdomen, which was filled with pus and fluid, was found present. The doctor couldn't do anything for him. He attempted to drain off this pus condition, and did take out the appendix, which was found diseased.

"The question in this case is whether or not the evidence shows any injury resulting which produced this condition or which accelerated the condition.

"Interpreting the medical testimony, of course, the Court is somewhat hampered by the fact that there are a lot of technical terms used which are difficult not only to pronounce but difficult to understand. But I am going to accept Dr. Balle's testimony, the pathologist, who testifies that there was acute purulent appendicitis.

"It seems to me that the medical testimony in this case is susceptible of only one interpretation, and that is this, that there was a condition of pus and fluid in this man's abdomen which was not produced by this accident, or slipping, or whatever you may call it; that the accident had not occurred for a sufficient length of time to have caused the condition which Dr. McKinney found when he operated."

Judgment was entered sustaining the department's order of rejection. From that judgment, the widow has appealed.

The facts are as follows: Between two and three o'clock p. m., December 2, 1932, Frank Thomas, an employee in a coal mine in King county, while assisting two fellow employees carry a heavy beam up a steep bunker incline, slipped and fell to his knees. He immediately commenced to suffer intense pain in his abdomen, and stated to a fellow workman, "I think I hurt myself in that slip—I think I ruptured myself." A few minutes later, he went to his shack, which was about twenty feet distant from the scene of the accident. He was in agony all night. He told one of the men who called on him the following morning, "I think I hurt myself when I fell yesterday." Late that afternoon, the day after the accident, he was taken in an automobile from the coal mine to a car line in Seattle. He traveled via street car from that point to his home in Seattle. He informed his wife that he was hurt at the mine.

A physician was summoned between nine and ten p. m. The patient was taken to Providence hospital, where an abdominal operation was performed on Thomas about midnight, or approximately thirty-three hours after the accident. The condition was diagnosed as a marked peritonitis. The patient died December 10, 1932, seven days after the operation. The surgeon

who performed the operation and to whom the patient was a stranger, in the proof of death form stated:

" . . . the remote cause of death Accidental injury while working at bunkers at coal mine. . . . the immediate cause of death Peritonitis and infection causing obstruction also traumatic appendicitis. . . . The very advanced general peritonitis found when I first saw Mr. Thomas, Dec. 3-32, is not in harmony with that which follows an acute case of appendicitis of natural causes beginning Dec. 2 '32. Hence I believe the injury received Dec. 2, '32, was the real beginning of the condition which caused his death."

An autopsy was performed by the surgeon who performed the operation and by an hospital pathologist. At the time of the operation, the patient's condition was so grave that no extensive exploration was made to locate the rupture which had permitted infectious bacteria to escape from either the appendix, intestines or stomach into the peritoneal cavity so as to cause the infection there. Nor was the autopsy of value in locating the perforation or rupture because of the extent to which the peritonitis had progressed by the time of death and because the embalmer had removed the gas and fluid from the abdominal viscera. At the time of the autopsy, it was impossible to determine whether there had been a puncture as the result of the injury.

The pathological examination of the appendix which was removed at the time of the operation disclosed a condition indicative of a chronic inflammation of the appendix for some time, and must have antedated the injury, although Thomas was not aware of it. The appendix was inflamed and so covered with the exudate and pus, like the peritoneal tissue, that it concealed any rupture or perforation of the appendix.

It appears that, three or four weeks prior to the accident, Thomas had stomach trouble, a temporary in-

disposition caused from improper food, and it is conceded by counsel for appellant that there was evidently a preexisting painless chronic inflammation of the appendix. It is quite true that the exact location of the rupture was not found. It is also established, even by the testimony of respondent's medical witnesses, that from a virulent infection the abdomen can be full of fluid in as short a time as six hours. It is also established by the evidence that acute attacks are usually manifested by excruciating agony prior to a rupture without trauma. It is quite clear that, if the peritonitis had commenced prior to the accident, Thomas could not have continued at his labor until the time he fell, without showing evidence or complaining of pain.

The surgeon who performed the operation on Thomas testified that trauma can accelerate chronic appendicitis and cause a rupture or perforation of a weakened diseased appendix. He expressed definitely the opinion that the injury received was the real beginning of the condition which caused the death of Thomas.

The evidence is clear that the appendix of Thomas was diseased and in course of time would have ruptured without any external pressure. It is just as clear under the testimony of the reputable surgeon who performed the operation that the rupture of that appendix was accelerated by the injury sustained by Thomas. One of respondent's medical experts admitted that possibly a blow resulting from slipping with a heavy timber and falling would cause a rupture of the appendix. The other three medical experts of the department seemed unwilling to admit that appendicitis could result from trauma.

In *Shadbolt v. Department of Labor and Industries,* 121 Wash. 409, 209 Pac. 683, we held that:

"Even though the appendix was diseased and in the course of time would have ruptured without any external pressure, if its rupture was accelerated by such pressure, this would constitute an injury."

That case was cited with approval in *Clark v. Department of Labor and Industries,* 131 Wash. 256, 230 Pac. 133.

There is ample competent evidence to sustain the position of appellant that Thomas fell and sustained a rupture. Some question is raised by respondent respecting the admissibility of some of that evidence. Any question as to the admissibility of that evidence is foreclosed by our holding in *McKinnie v. Department of Labor and Industries,* 179 Wash. 245, 37 P. (2d) 218, hence we refrain from discussion of the question. Appellant sustained the burden of proof that the accident suffered by Thomas caused or accelerated a rupture of the appendix or intestines and that his death resulted therefrom.

The judgment is reversed, with direction to the superior court to remand the claim of appellant to respondent with instructions to allow the same.

MAIN, GERAGHTY, and BEALS, JJ., concur.

TOLMAN, J. (dissenting)—In my opinion, the evidence does not preponderate against the findings of the trial court, and therefore the judgment should be affirmed.