[No. 29719. *En Banc.* October 24, 1946.]

SEATTLE-TACOMA SHIPBUILDING COMPANY, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 173 P. (2d) 786.

*Bogle, Bogle & Gates* and *Edw. S. Franklin,* for appellant.

*The Attorney General, Harry L. Parr, Assistant,* and *Graham K. Betts,* for respondent.

STEINERT, J.—This is an appeal by an employer from a judgment of the superior court awarding a widow's pension under the workmen's compensation act for the death of a workman alleged to have resulted from an industrial accident.

The workman, John George Johansen, sixty-seven years of age, was a painter by trade and as such was employed by Seattle-Tacoma Shipbuilding Company, appellant herein. Johansen died December 4, 1941, following an attack of appendicitis on November 29th. A year later, November 25, 1942, his widow, Lena B. Johansen, appearing by an attorney, presented to the department of labor and industries a claim for widow's pension. The claim stated that the cause of death was "ruptured appendix."

The department, through the office of its supervisor, investigated the matter, and, upon consideration of the report of the investigation, the supervisor rejected the claim on February 10, 1943, on the ground that the workman's death was not the result of any injury or circumstance connected with his employment, but was due solely and exclusively to natural causes. The claimant widow, through her attorney, thereupon petitioned for a rehearing before the joint board. In her petition, the claimant stated that she

" . . . will produce evidence that the burst appendix resulting in the death of George Johansen was directly and proximately the result of injury or strain incurred in the course of his employment, and that but for such injury or

strain the death resulting from the bursted appendix would not have ensued."

The petition was granted, and a rehearing was held before an examiner for the joint board upon oral testimony on May 28, 1943, which was eighteen months after the death of the workman. The joint board, after reviewing the record made before the examiner, reversed the order of the supervisor and entered in its stead an order allowing the widow's claim for pension and charging the accident cost experience of the employer with the sum of forty-five hundred dollars, under the provisions of Rem. Rev. Stat. (Sup.), § 7676 [P.P.C. § 717-1]. Thereupon, the employer, who had appeared at the rehearing, appealed to the superior court. Trial was had by the court, without a jury, upon the transcript of the testimony adduced at the rehearing and the file of the supervisor, certified and sent up by the department. The court made findings and conclusions, upon which it entered judgment affirming the order of the joint board. The employer has appealed from the judgment of the superior court.

█ The burden was, of course, upon the claimant widow to prove in the rehearing before the joint board that her husband, the workman, sustained an "injury" compensable under the workmen's compensation act, and that such injury was a proximate cause of his death. If it can be said that her proof was insufficient as a matter of law to meet that burden, then the superior court erred in affirming the joint board's order.

The validity of the widow's claim rests entirely upon the testimony of the widow and two physicians called by her as witnesses. It is therefore necessary that we examine that evidence with some particularity.

Upon direct examination at the rehearing before the joint board, the claimant widow testified:

"Q. You remember the day that he [the decedent] first complained of his work down there? A. Yes, being sick. Q. Yes? A. Well, the night of the 29th of November, when he came home that morning, after he had his lunch, he went to work and worked an hour or two, and then he

lifted something, and it slipped, and it pressed against his abdomen, and then the pain started. MR. FRANKLIN: I move that the answer be stricken on the ground that it is hearsay. Q. Did you see any evidence— A. He had all his clothes—he had his clothes full of paint. He got his shirt and everything on his stomach. Q. About where was that? A. Right here. I have said, gosh, I asked him, 'How did you get your clothes full of paint?' And he even had the buttons tore off. The way it slipped, it just rubbed the paint off on his clothes. He said, 'I am a painter, don't you know?' MR. FRANKLIN: I don't want to interrupt you. I would like to have the record show a continuing objection on the ground that all this testimony of this witness—the testimony this witness may give relative to the alleged statements made to her by her deceased husband— MR. CUMMINS [the examiner for the department]: You may continue over the objection. Q. Was there paint on other parts of his clothes? A. Well, of course, overalls was full of paint. I couldn't tell from the overalls. He put a clean shirt on that afternoon when he left the house. I just gave him a clean shirt. I have noticed it on the shirt. I threw it in the rag bag and gave it away. I won't wash them after he was gone. Q. Did you testify that a button had been torn off? MR. FRANKLIN: Objected to as leading and suggestive.

"Q. Did Mr. Johansen go to work the next day? A. Well, he said, 'I wonder if I have to call the doctor,' so I wanted to get up and call the doctor, so in a minute or so, he said, 'There is a lot of fellows in the shipyards got the stomach flu, and I think I got the same.' When he came home, he said, 'I never had a pain in my stomach in all my life,' and I know he never complained about his stomach. Q. Did he go to work the next day? A. When came half-past two, I asked him, 'What are you going to do?' And I asked him if he was going to see the doctor, and he didn't answer, and he said, 'I am a going to the shipyard, and if I don't fell better, I tell them I can't work.' Q. Did he go to the yard? A. Yes, and even then he went to the nurse at the shipyard. MR. FRANKLIN: I object to this on the grounds it is hearsay. Q. He told you he had gone to the nurse? A. Yes, and the nurse told him, 'You go right home and call the doctor and go to bed.' Q. Did you meet him sometime that afternoon? A. He knew that I was down at Pike Street Market to see a lady friend, and he just walked in to me, and then he told me what the nurse told him. Q. What did he do, then? A. Well, he looked too terrible, and he

said he is terrible sick, and I said, 'You can't go home.' I said, 'It is too far out there to get the doctor.' I said, 'Get somebody right away.' "

On cross-examination by Mr. Cummins, the examiner for the joint board, Mrs. Johansen, the claimant widow, further testified:

"Q. When he first came home, he told you on the morning of the 30th, did he, that his stomach was unsettled and that he thought he had the stomach flu, is that what he told you? A. He said, 'After I pressed the thing against my stomach, then, the pain started,' and he said, 'I never had a pain in my stomach in all my life, and I wonder if I have to call a doctor,' and I said 'You know what to do.' Q. That isn't what I asked. Didn't he first tell you that he thought his stomach was unsettled and thought he had the flu, and afterwards he told you this other thing? A. No, he told me from the beginning that he had a pain after he lifted the thing, and the pain—the thing slipped, and the pain started. He told me he had a pain, and he said he never had a pain in his stomach in all his life."

Following their meeting at the Pike Street Market in the afternoon, as testified by the claimant, Mr. and Mrs. Johansen went to the office of Dr. H. S. Hill, who examined Mr. Johansen, diagnosed the case as acute appendicitis, and made arrangements for the patient's admission to the Columbus hospital. At eight o'clock that evening, December 3, 1941, Dr. Hill removed the diseased appendix, which was already ruptured. A second operation was performed at 4:30 p. m. on December 4th, following which Mr. Johansen died at 6:25 that same evening.

Dr. Hill, examined as a witness for the claimant widow, testified that when Mr. Johansen first called on him with reference to his illness, he, the patient, complained of severe pains over the right lower quadrant of the abdomen, but gave no history of an industrial injury. The doctor further stated that he saw no evidence of external injury to the patient's abdomen or in the region of the appendix, and that, in his opinion, "the case of appendicitis was just a diseased appendix following its natural course."

Apparently realizing that the doctor's testimony was unfavorable to the claimant, her counsel addressed to the witness the following questions and in response received the following answers:

"Q. Incidentally, Doctor, you and Mrs. Johansen have had some difficulties? A. Only that she wanted me to make a statement that this should be a State case and I refused. That was all. Q. You feel rather unfriendly toward her? A. Not at all. Not at all unfriendly to her. I only stated my objections in a very tersely manner and as plainly as I could. She has come to my office several times. I told her I would have nothing further to do with it."

The only other witness testifying for the claimant widow was Dr. William K. Gallagher, who was called as an expert to testifiy in response to hypothetical questions. He had never seen the workman, Johansen, and had no direct knowledge whatever of the case. While the sincerity and accuracy of the doctor's testimony, to the extent that it went, are in no sense to be criticized, the fact remains that he knew nothing about the particular matter, except what was conveyed to him by the hypothetical questions propounded to him. We quote his testimony on the subject:

"Q. Doctor, will you assume the following facts to be true? That an apparently normally, healthy man, a husky well built man who had never made any complaints whatsoever of pains in the region of the appendix is, or apparently was, alright, was a painter, and in the course of his employment was painting objects which required being moved and in the moving of the objects, which were heavy, he pushed or used the pressure of his body by pressing the objects against the lower part of his body in the region of his abdomen and while doing that, sustained a severe pain in the abdomen. That the following day, he was operated for appendicitis and his appendix was found to have been burst and was gangrenous, and apparently badly diseased. What is your opinion as to the effect of the pressure upon his abdomen from the object which he was moving in the manner described? [Question objected to because it assumed facts not in evidence]. Q. (continuing) Under that statement of facts, Doctor, what is your opinion as to whether or not the pressure on the abdomen caused the gangrenous appendix to burst? [Question objected to on

the same ground.] A. As I remember it, Mr. Betts [attorney for the claimant] stated this as a hypothetical case and not on the basis of any testimony that had been offered. He said to present a case which was erected out of imagination. As far as I know he is stating a hypothetical question and in consideration of the questions which he asked, the following points, I think, probably could be brought out. . . . It is possible for a man, first, to have a diseased appendix without the symptoms of pain making it known. Second, that trauma upon the abdominal wall where such a diseased friable organ is present can cause rupture and disintegration of said organ. Q. Under the facts I stated, Doctor, have you formed an opinion as to whether or not the trauma in the particular instance caused it? A. You have reference to this hypothetical case? Q. Yes. . . . A. It is possible in some cases, or under some circumstances such as I outlined, I think it would be probable. Q. Well, Doctor, I want your opinion as to whether or not under the facts that I stated the trauma and the particular instance caused or probably caused the bursting of the appendix? . . . A. *In answer to the question, I would say that it lies somewhere between a possibility and a probability. Q. Probable? A. Might be probable.*" (Italics ours.)

The widow's claim for the allowance to her of a pension under the workmen's compensation act is predicated entirely upon her contention that the ruptured appendix, sustained by her husband, the workman, was caused by his lifting some object which slipped and pressed against his abdomen.

 There is no evidence whatever to support that contention except the bare statement of the widow at the rehearing before the joint board to the effect that her husband, the workman, had told her on the night of November 29, 1941, when he came home from work, that he "had lifted something, and it slipped, and it pressed against his abdomen, and then the pain started." It will be recalled that, according to her testimony, her husband at the same time told her that he thought he had "stomach flu," which was prevalent in the shipyard at that time.

The claimant widow's testimony was pure hearsay, purporting to relate the substance of a conversation between the claimant and her husband eighteen months prior to the

time the testimony was given. Testimony of this kind is very unreliable, being easy to manufacture and hard to refute; it is also weak, because the narrator assumes to quote the exact words used by parties to a conversation long after the conversation took place.

Conceding that, under some of our decisions, such testimony in cases of this kind has been held to be admissible for "what it is worth," and "when consistent with other evidence in the case," is entitled to "some probative effect" (*McKinnie v. Department of Labor & Industries,* 179 Wash. 245, 37 P. (2d) 218; *Thomas v. Department of Labor & Industries,* 181 Wash. 683, 44 P. (2d) 765; *Guiles v. Department of Labor & Industries,* 13 Wn. (2d) 605, 126 P. (2d) 195), we are nevertheless of the opinion that in this case the testimony of the widow on the subject of the cause of the death is of infinitesimal worth in its probative effect, especially so because it is contrary to, or at least not in harmony with, other evidence bearing on that subject. Two fellow workmen, one of whom labored next to Mr. Johansen, on the same bench, testified that the decedent never did any lifting while at his work, and that in fact he had stated to them a number of times that, because of a rupture sustained by him some years before, he could not do any work which required lifting. Those witnesses further testified that the decedent never reported nor said anything to them about his having been injured on the occasion here in question.

The testimony given by Dr. Hill, referred to above, not only does not support the widow's claim, but is directly contrary thereto. His testimony is entitled to special consideration because he was the attending physician during Mr. Johansen's last illness and was the only person who, from a medical viewpoint, observed and was cognizant of the workman's physical condition at the time here involved.

With reference to the testimony given by Dr. Gallagher, who testified only in response to hypothetical questions, it is apparent that this witness did not testify that any *trauma* caused, or *probably* caused, the bursting of the appendix, but only that, assuming the trauma asserted by the widow,

the connection between it and the burst appendix lay "somewhere" between a probability and a *possibility*. The logical conclusion from his testimony is that until and unless the result could be characterized as a probability, it remained simply a "possibility," resting in the field of speculation and surmise.

The case at bar is analogous to *Kralevich v. Department of Labor & Industries*, 23 Wn. (2d) 640, 161 P. (2d) 661, wherein the examining doctor denied that there was any connection between the injury suffered and the asserted accident, and another doctor, testifying to a hypothetical question, admitted the possibility of a connection between the disability and the mishap. This court there sustained the ruling of the trial court taking the case from the jury for the reason that there was insufficient evidence to support the claimant's contention.

█ The general rule, from which this court has never deviated, is stated in 135 A. L. R. 517, as follows:

"It appears to be well settled that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testimony as to possibility is meant testimony in which the witness asserts that the accident or injury 'might have,' 'may have,' or 'could have' caused, or 'possibly did' cause the subsequent physical condition or death or that a given physical condition (or death) 'might have,' 'may have,' or 'could have' resulted or 'possibly did' result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal relation in question and does not include words indicating the probability or likelihood of its existence."

In *Anton v. Chicago, M. & St. P. R. Co.*, 92 Wash. 305, 159 Pac. 115, this court expressed its views with respect to such evidence, in the following language:

"Taking the opinion of the witness [a medical man] for the appellant, as quoted above, at its full worth, we think it is no more than a statement of a possibility or possibly a probability, more or less remote, that the tuberculosis is a result of the injury. This is not enough. The law demands

that verdicts rest upon testimony and not upon conjecture and speculation. There must be some proofs connecting the consequence with the cause relied upon. The testimony, whether direct or circumstantial, must reasonably exclude every hypothesis other than the one relied on."

To the same effect, see *Kavaja v. Department of Labor & Industries*, 126 Wash. 284, 218 Pac. 196; *Tomovich v. Department of Labor & Industries*, 126 Wash. 287, 218 Pac. 197; *Cooper v. Department of Labor & Industries*, 195 Wash. 315, 80 P. (2d) 830; *Cole v. Department of Labor & Industries*, 200 Wash. 296, 93 P. (2d) 413.

The workmen's compensation act was adopted in this state, not to include and compensate cases "erected out of imagination," as the doctor termed it, or cases drawn from the field of "speculation and surmise," but only those cases where a causal connection between an industrial injury and a subsequent physical condition is established, with at least some degree of probability. As was stated in *Boyer v. Department of Labor & Industries*, 160 Wash. 557, 295 Pac. 737, there must be "some evidence of probative value that removes the question of causal relation from the field of speculation and surmise."

An accident may be inferred from circumstances, but "the evidence must present something more than a mere possibility or conjecture." *St. Germain v. Potlatch Lbr. Co.*, 76 Wash. 102, 135 Pac. 804.

"The law will note and compensate for consequences of injuries reasonably certain to occur, and will base its judgments upon opinion evidence; but we know of no cases holding that the proximate cause of a disease can be traced by opinion evidence to an accident when the testimony, considering the lapse of time and the nonobservation of medical men, goes no further than to show that the injury might have been a sufficient cause." *Anton v. Chicago, M. & St. P. R. Co., supra.*

█ The case made by the claimant widow does not measure up to these standards. Her case consists merely of her hearsay testimony as to remarks of her husband, asserted long after his death, and the inconclusive reply of

an expert medical witness to a hypothetical question based upon such hearsay.

Other grounds for reversal of the judgment are urged in appellant's brief, but, in view of our conclusions already expressed, it will be unnecessary to consider the additional grounds, and, for that reason, we express no opinion thereon.

The judgment of the trial court is reversed, with direction to enter judgment denying the claim and dismissing the proceedings brought thereon by the claimant widow.

ROBINSON, SIMPSON, JEFFERS, MALLERY, and CONNELLY, JJ., concur.

MILLARD, C. J., concurs in the result.