No. 16,802.

INDUSTRIAL COMMISSION ET AL. *v.*
CORWIN HOSPITAL ET AL.

(250 P. [2d] 135)

Decided October 6, 1952. Rehearing denied November 6, 1952.

Mr. Duke W. Dunbar, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. Peter L. Dye, Assistant, for plaintiff in error Industrial Commission.

Messrs. McComb & Zarlengo, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the court.

This action originated before the Industrial Commission with the filing, by plaintiff in error, of a claim for workmen's compensation against Corwin Hospital, Sisters of Charity and the insurance carrier. Following hearings before the referee, the Industrial Commission approved his findings and awarded compensation to claimant. The employer and insurance carrier brought this action in the district court of the City and County of Denver for a review of the proceedings before the commission, and prayed for an order vacating the award. The district court, upon review of the record,

found the issues in favor of plaintiffs Corwin Hospital, Sisters of Charity and Hartford Accident and Indemnity Company, and entered judgment setting aside the award of the Industrial Commission. Claimant and the commission bring the case here for review by writ of error.

We think the pertinent facts are sufficiently set forth in the findings of the referee, from which we quote the following:

"On October 25, 1949 claimant was stricken with polio. At the time that the disease appeared she was a nurse in the polio ward at Corwin Hospital, operated by the Sisters of Charity. The polio ward was established as an isolation ward in the month of August, and the claimant was continuously on duty in that ward until she came down with the disease. During that period, the ward was operating short-handed. The nurses were frequently required to put in extra hours and were materially overworked. During that period the claimant made but infrequent trips to town, and when she attended a motion picture show drove to a drive-in theatre with a friend rather than to expose patrons of a conventional type theatre. The doctors are agreed that the exact cause of polio is not known, but it is conceded to be epidemic in nature. The means of transmission of this disease is likewise not known.

"However, during the period that claimant was employed in the polio ward, two of the four nurses so employed contracted the disease. Dr. Boyer, in answer to a question as to whether there were any published figures which would show a relative incidence of polio among nurses as compared with other young women of their age in other pursuits testified, 'I don't know. I have never seen such figures, though it is generally known and generally recognized by the medical profession that there is very much greater danger of polio among nurses and among nurses who are treating polio patients than average.' Upon being asked if he had any knowledge of the situation at the hospital or of the

claimant's activities that he felt might be a factor to be considered in the case he testified, 'No, I think not, Mr. Referee. I think it is of definite importance, though we don't know the mode of transmission of this disease, I think it is of definite importance that the rate of incidence is higher among nurses, doctors, physiotherapists, who are treating and coming in contact with these patients.'

"The Referee, therefore, finds that the claimant herein contracted polio as ·a result of exposure while in the course of her duty and that the contracting of this disease constitutes an accident arising out of and in the course of her employment. Temporary total disability has not terminated and permanent disability cannot at this time be determined. Claimant's wages were $207.00 per month."

Question to be Determined.

*Was there competent evidence presented before the referee upon which findings could be made that claimant suffered a compensable accident arising out of and in the course of her employment?*

■■ The question is answered in the affirmative. In determining whether a disability is "accidentally sustained" within the meaning of the Workmen's Compensation Act, we have said that "nothing more is required than that the harm that the plaintiff has sustained shall be unexpected." *Carroll v. Industrial Commission,* 69 Colo. 473, 195 Pac. 1097; "To constitute an accidental injury, it is not necessary that there should be anything extraordinary occurring in or about the work itself, such as slipping, or falling, or being hit." *Central Surety & Ins. Corp. v. Industrial Commission,* 84 Colo. 481, 271 Pac. 617. To like effect are the decisions of this court in *Keating v. Industrial Commission,* 105 Colo. 155, 95 P. (2d) 821; *Gates v. Central City Opera House Ass'n,* 107 Colo. 93, 108 P. (2d) 880; and *Industrial Commission v. La Foret Camps,* 125 Colo. 503, 245 P. (2d) 459.

■ We have held repeatedly that the Workmen's

Compensation Act is highly remedial and beneficient in purpose, and should be given a liberal construction so as to accomplish the evident intent and purpose of the Act. *Danielson v. Industrial Commission,* 96 Colo. 522, 44 P. (2d) 1011; *L. B. Cole Produce Co. v. Industrial Commission,* 123 Colo. 278, 228 P. (2d) 808.

It is strenuously argued by counsel for the employer and the insurance company that there was no competent evidence offered before the Industrial Commission tending to establish any disability resulting from an accident arising out of and in the course of claimant's employment. It is urged that the award of the commission is based upon mere possibility and speculation. With these contentions we cannot agree. In *Canon Reliance Coal. Co. v. Industrial Commission,* 72 Colo. 477, 211 Pac. 868, this court affirmed an award by the Industrial Commission wherein the disease of cancer, allegedly caused by a blow in the face, was held to be a compensable accident. In dealing with the question of causal connection in that case we said: "The whole subject is shrouded in more or less mystery and despite the present opinions and theories of some of the authorities and members of the profession the true cause of such a cancer may tomorrow be established as entirely separate and apart from such an injury. But in our opinion the foregoing is sufficient, 'substantial and credible evidence' to support the findings and preclude us, under the rule repeatedly laid down by this court, from disturbing those findings on the theory that the commission, in basing them upon such evidence, acted 'without or in excess of its powers.'" (Citing cases.)

In *Columbine Laundry Co. v. Industrial Commission,* 73 Colo. 397, 215 Pac. 870, the commission found that the disease of pneumonia, which caused the death of an employee, arose out of the circumstances of his employment which involved excessive exposure to carbon monoxide gas thus weakening the vitality of decedent and

lessening his resistance to the disease which caused his death.

In *Industrial Commission v. Swanson,* 93 Colo. 354, 26 P. (2d) 107, the Industrial Commission denied compensation for pneumonia. The "accident" in that case was the exposure of the deceased to strong drafts produced by the opening of a tunnel door while he was in a mine. The district court reversed the findings of the Industrial Commission and directed the award of compensation. This court affirmed that judgment.

In *Gates v. Central City Ass'n, supra,* we quoted with approval from *In re McNicol,* 215 Mass. 497: "An accident 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." We think such a causal connection is shown by the evidence in this case.

In addition to the testimony specifically mentioned in the findings of the commission, there was ample evidence to establish the following facts: Claimant was working in the ward of the hospital where polio cases were being treated; she was employed exclusively in that ward; she had been working there for two months before she contracted polio; she had extensive actual physical contact with the patients suffering from polio, administering hot packs, changing beds, bathing and feeding them; this contact was particularly close since most of the patients were helpless, paralyzed or partially paralyzed; the breath from the patients would be blown in her face; masks were worn but were of doubtful value against this type of virus infection, "in fact no mask is made that can keep the virus out." Nurses and doctors in contact with this disease are naturally more likely to become infected than people who are not so exposed. This fact is recognized by medical authorities as a factor and is demonstrated by the fact that complete isolation technique is

required for the treatment of polio. Medical opinion is in general agreement that excessive fatigue and overwork are factors in the incidence of polio, making a person more susceptible to the disease. During the time when claimant was nursing these polio cases the hospital ward was short of help. Some of the nurses left and there was difficulty in securing others to come in and help. There was an increase in the number of patients. Claimant was working long hours, her work was strenuous, and she was very tired prior to the time she became ill. Of the four regular nurses who remained on duty in the polio ward three became ill, two, including claimant herein, definitely with polio. No specific determination ever was made as to whether the third nurse was afflicted with the disease.

It is true that the medical evidence indicated that not too much is known, with absolute certainty, about the actual cause and transmission of polio. We think, however, that the foregoing statement of facts is amply established by the evidence, and that these facts, together with those set forth in the findings of the referee, were sufficient to support the award of the Industrial Commission.

Judgment of the trial court accordingly is reversed and the cause remanded with directions to reinstate the award of the commission.

MR. CHIEF JUSTICE JACKSON and MR. JUSTICE ALTER dissent.