[No. 33053. Department Two. January 8, 1955.]

ED PARR, *Appellant*, v. THE DEPARTMENT OF LABOR & INDUSTRIES *et al., Respondents.*[1]

*F. W. Loomis,* for appellant.

*The Attorney General, Henry Heckendorn* and *Robert E.*

[1]Reported in 278 P. (2d) 666.

*Stoeve, Assistants,* for respondent department of labor and industries.

*Donley & Ingram,* for respondent Polson Logging Company.

HILL, J.—This appeal is determined adversely to the appellant on the following holdings. (All employment referred to herein is extrahazardous.)

■ When a workman is allergic to dust of various kinds and characters, such as road dust, house dust, wood dust, etc., and that allergy causes asthma, and the asthma becomes permanently disabling (in whole or in part), the fact that his employment required him to work in great quantities of wood dust for several hours at a time during certain seasons of the year, occasioning him great discomfort and causing asthmatic attacks, does not in itself establish that his disabling asthmatic condition arose naturally and proximately out of his employment and hence is an occupational disease within the purview of RCW 51.08.140 [*cf.* Rem. Supp. 1941, § 7679-1, which was the applicable statute when this claim was filed]. We so hold for the reason that the dust allergy could have caused the asthmatic condition regardless of his employment. *St. Paul & Tacoma Lbr. Co. v. Department of Labor & Industries* (1943), 19 Wn. (2d) 639, 144 P. (2d) 250.

■ The causal relationship between a disabling disease and the workman's employment must be established by medical testimony before the disease can be classed as occupational within the purview of RCW 51.08.140. *Ehman v. Department of Labor & Industries* (1949), 33 Wn. (2d) 584, 206 P. (2d) 787. When a doctor's examination discloses a disabling disease such as asthma and his knowledge as to the causal relationship between the disease and the conditions of the patient's employment is entirely dependent upon the history given to him by the patient or others, the value of his opinion as to causal relationship obviously depends upon the extent and accuracy of the information upon which that opinion is based. See discussion in *Johnson v. Bangor R. & Electric Co.* (1925), 125 Me. 88, 131 Atl. 1.

■ Where the only medical testimony that a workman's employment was a proximate cause of his disabling disease is the testimony of a doctor, based upon a history given by the workman of recurring attacks of asthma caused by wood dust encountered in the course of his employment, and the doctor has not been advised of a vital element bearing upon causal relationship, *i.e.*, that the workman is allergic to dusts of various kinds, such as road dust, house dust, etc., which also cause him to have asthmatic attacks, such testimony does not have sufficient probative value to support a verdict on the issue of causal relationship. *The situation is comparable to that of the expert who answers a hypothetical question from which undisputed material facts have been omitted.* See *Berndt v. Department of Labor & Industries* (1954), 44 Wn. (2d) 138, 265 P. (2d) 1037.

The factual background of the foregoing holdings is as follows:

Ed Parr quit his employment with the Polson Lumber Company on January 2, 1945, at the age of seventy-three, after almost forty-five years of continuous service with that company. Four years later (in the first quarter of 1949), he filed a claim of occupational disease (asthma). (Subsequent to the filing of his claim, a statute was enacted requiring that claims based upon occupational disease be filed within one year of the date on which the claimant receives notice from a physician of his occupational disease. Laws of 1951, chapter 236, § 1, p. 744; RCW 51.08.140.)

A medical examination of this claimant was made by Drs. K. M. Soderstrom and Frederick Slyfield on June 27, 1949. We quote from their comments and conclusions:

"This man is fundamentally disabled in the way of gainful occupation because of his age, his arthritis and his eyesight. His asthma is definitely a disabling factor as well. We feel that because of the chain of events and his prolonged consistent employment in the same environment that we must recognize a distinct relationship between his years of employment and the pulmonary affliction which he alleges caused him to give up his work. The asthma that he presents is definitely of an allergic nature and it can be adequately shown that the allergen was to be found in the dusty atmos-

phere in keeping with his occupation. We do not seek issue whether or not an allergy should be considered an occupational disease but the fact remains in the case that the onset, development and aggravation of his symptoms occurred during the course of his employment. It is our feeling that had he not had such employment he would probably have been spared asthmatic symptoms which have caused him to give up his normal occupation. . . .

"We do not recognize that he is totally disabled as a result of his asthma in that some disability would have to be attended by his age and other infirmities. Had he not had the asthma we are sure that he could carry on at least to some extent in his former employment as a Crane operator. For this reason we feel that there is some element of disability in the form of aggravation attributed to his employment and feel that permanent partial disability rating of $\frac{1}{3}$ ($33\frac{1}{3}\%$) of the maximum disability allowable for such illness be permitted and be made retroactive from the date of his separation from work in January 1945."

(It is hereinafter pointed out that these findings and conclusions were based solely upon Parr's incomplete and misleading statements to the physicians concerning the cause of his asthma.)

The supervisor of industrial insurance rejected Parr's claim September 30, 1949. An appeal from this order was taken to the board of industrial insurance appeals, which affirmed the supervisor and rejected the claim.

An appeal to the superior court for Grays Harbor county followed. A motion to dismiss that appeal was made on the ground "that the record in this case is not sufficient to support a jury verdict." The motion was granted and an order entered dismissing the appeal. From that order the claimant appeals to this court.

Our examination of the record convinces us that the claimant has failed to establish by medical testimony the causal connection between his employment and his asthma.

It is conceded that from 1917 until he quit in 1945, Parr operated what is designated as an "unloading donkey" for the Polson Logging Company. As trainloads of logs (thirty-five to seventy-five cars) were brought in from the woods and placed on the unloading dock alongside the Ho-

quiam river, the unloading donkey pushed the logs off the cars into the river. It took less than a minute to unload a car. It was the dust arising from this operation and from the sweeping of the unloading dock and the handling of the bark knocked off the logs and salvaged for fuel for the donkey that Parr claims to have been the proximate cause of his disabling asthma. He concedes that when it was raining there was no dust from the logs.

He testified that when he had his first asthmatic attack in May of 1943, his doctor suggested a change of climate, and he went to Yakima in June of that year but became worse there. He testified without objection as to the diagnosis of the doctor in Yakima and stated that, as a result of eighty-six tests, he was found to be allergic to dust, milk, and eggs. The doctor in Yakima told him that he had come "to the poorest place in the United States for anyone with my disease," and that:

" . . . I could go to any climate I wanted to and that I couldn't get away from that dust. As long as I wear clothes and pull them on and off I am going to get that dust and he told me it is going to affect me."

He returned to his work at Hoquiam on July 4, 1943, and thereafter used medication that the doctor in Yakima had prescribed that proved very effective. He had no more trouble until May, 1944.

He testified that his asthma bothers him where there is any dust at all, that it was worse while he was in Yakima, and that road dust brings on attacks and he does not go out in a car if he can avoid it, and that house dust affects him. ("I can't stand to be in a house when a woman sweeps with the broom. I have got to get out.")

Two other lay witnesses testified that dust conditions were bad where Parr worked while logs were being unloaded, particularly during the summer months.

Claimant relies heavily upon the statements of the Yakima doctor, which came in as hearsay. If those statements and the testimony of claimant and his lay witnesses are given full value, still all that is established is that the claimant suffers from a disabling asthma that is caused by

dust (road dust, house dust, wood dust, etc.) and that he has worked in wood dust during certain periods of his employment. On that basis he might have had disabling asthma if he had never worked on an unloading donkey.

The causal relationship between the disabling disease and claimant's employment must rest upon the testimony of Dr. Slyfield, who saw the claimant only once (in June, 1949). He made no allergy tests and based his conclusions as to the causal relationship between the claimant's asthma and his employment solely upon the history given to him at that time. His testimony goes no further on the question of the extent and disabling effect of the asthma than does the report from which we have heretofore quoted the comments and conclusions. Dr. Slyfield testified:

". . . we do not know just what the constituent of the dust was which caused his asthma. The only thing is we had good reason to believe it was due to the wood dust."

The weakness of claimant's case is that the "good reason to believe it was due to the wood dust" is based upon misinformation, or at least a lack of complete information. When asked concerning road dust, the doctor testified:

"Of course that is quite a different dust. We can only guess that if he is allergic to wood dust, dust from the road probably wouldn't bother him."

Pursuing this matter further, we have the following questions and answers:

"Q. Isn't it a fact, doctor, if he was allergic to ordinary road dust he would be just as bad in an automobile in effect as if he was running a crane? A. Yes. Q. So in other words any dust regardless of whether he was working or not would have the same effect on him? A. On that hypothesis that would be true, *but you see the patient told us that it was while he was working at this crane operation that he got into difficulty, that caused his difficulty.* Q. That is your conclusion? A. Yes, *based on the fact that he did not have trouble when he came into contact with other things except certain foods.*" (Italics ours.)

The final question put to Dr. Slyfield and his answer were as follows:

"Q. Now as I under [*sic*] your prior testimony, Doctor, you felt that the asthma this man had was causally related to his employment with the Polson Logging Company where he was employed as a crane operator. Now what was the basis for your conclusion that it was causally related? A. Of course we recognize that an allergic individual is commonly in trouble with contact with things outside of his place of employment, but we also felt that we had to find for this plaintiff in that his chief trouble arose while he was on the job and we couldn't account for it by saying well, he worked somewhere else where he became allergic, because he had been so long in this one place. It seemed to us the logical thing, the fair thing was to assume even if we couldn't absolutely prove it, that he got this trouble there at this place of employment."

The conclusion is inescapable that Dr. Slyfield was not aware that appellant's difficulties were not limited to his work, and that not only wood dust but house dust, road dust, and dust in another locality far from his place of employment brought on asthmatic attacks. The doctor's testimony as to causal relationship is based upon a hypothesis not supported by the evidence and is consequently not sufficient to support a verdict on the issue of causal relationship.

The distinction between this case and *Simpson Logging Co. v. Department of Labor & Industries* (1949), 32 Wn. (2d) 472, 202 P. (2d) 448, which the appellant-claimant urges is decisive of the present case, is that there it was proved that the claimant's asthma was caused by dust and smoke encountered in his place of employment and we decided that asthma so caused was an occupational disease. Here the claimant has failed to establish that the disabling asthmatic condition arose naturally and proximately out of his employment.

Nor have we followed the line of cases on which the respondent-employer relies (of which *Petersen v. Department of Labor & Industries* (1950), 36 Wn. (2d) 266, 217 P. (2d) 607, is an excellent example) where we have indicated the inherent weakness of a determination of a claimant's physical condition on the basis of statements by him and a

recital of his subjective symptoms. We are here concerned not with the claimant's physical condition but with what caused it. The partially disabling asthmatic condition is conceded. The source of the doctor's information on the issue of whether the condition which he found to exist naturally or proximately arose from the claimant's employment, must in practically every case come from the claimant or others. Whether its source is a hypothetical question in a trial or a recital by a claimant or employer, the important question is whether the information upon which the doctor's opinion as to causal relationship is based is complete and accurate. A claimant does not prove such causal relationship by the testimony of a doctor whose information is shown by the claimant's own testimony to be neither complete nor accurate.

The judgment of dismissal is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.

------

May 13, 1955. Petition for rehearing denied.