[No. 33454. Department One. April 26, 1956.]

LYDIA VIRGINIA SAWYER, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Respondents*.[1]

[1]Reported in 296 P. (2d) 706.

*Walthew, Oseran & Warner* and *Eugene Arron,* for appellant.

*The Attorney General, John Quine, Assistant, Holman, Mickelwait, Marion, Black & Perkins,* and *Boardman W. Brown,* for respondents.

DONWORTH, J.—On October 31, 1950, Lydia Virginia Sawyer filed a claim for a widow's pension with the department of labor and industries. This claim was rejected by the supervisor of industrial insurance on November 9, 1950, on the ground that her husband's death was not caused by an industrial injury or an occupational disease within the meaning of the workmen's compensation act.

On November 24, 1950, the widow appealed from the supervisor's order to the board of industrial insurance appeals, alleging that, immediately prior to the decedent's death, he was permanently and totally disabled from engaging in any gainful occupation by reason of an occupational disease contracted while employed by the Boeing Airplane Company, and further, that decedent's fatal heart attack was caused by an occupational disease.

On December 7, 1950, the board granted the appeal. Following hearings on the matter, the board sustained the order of the supervisor denying a widow's pension, issuing its decision and order on August 30, 1954. The widow appealed from the board's order to the superior court, demanding a trial by jury. Prior to the empaneling of a jury, the department and the employer joined in a motion to dismiss plaintiff's superior court appeal for the reason that the certified board record contained insufficient evidence to establish a case to be submitted to the jury. The trial court heard arguments on the motion, and on May 27, 1955, entered a judgment dismissing the appeal and affirming the order of the board of industrial insurance appeals in its entirety.

The two questions which the trial court decided adversely to the widow in holding that the evidence before the board of industrial insurance appeals was insufficient to warrant submitting the case to the jury were: (1) Was the decedent's death proximately caused by his injury sustained in the course of his employment at the Boeing Airplane

Company; and (2) was the decedent permanently and totally disabled at the time of his death as a proximate result of that injury?

The following is a statement of the basic facts giving rise to this claim.

The decedent, James Francis Sawyer, commenced employment with Boeing Airplane Company in June, 1949, as a truck driver. His job consisted of collecting and transporting to the city dump refuse found upon the premises. In August, 1949, decedent, while trampling down a pile of scrap metal, sustained a cut approximately one inch long on the calf of his right leg from a piece of aluminum or chrome. He did not seek medical treatment at the company clinic or elsewhere, because at the time he did not regard it as serious enough to require medical attention. The only treatment which he received consisted of the application of medicated vaseline to the area by his wife. There was no accident report made nor claim filed, and decedent did not lose any time from employment on account of the injury.

About one month later, in September, 1949, decedent was laid off by his employer because of a reduction in the force.

The cut was slow in healing, and small blisters broke out around the area. Shortly thereafter, he developed a rash, which gradually spread over most of his body, causing the skin to itch, crack, bleed, scale, and burn. This condition became so serious that approximately one month following his termination of employment decedent was unable to work, although he was offered employment.

The decedent did not consult a doctor until about eight months after receiving the cut on his leg, when, in April, 1950, he consulted Dr. Stephen T. Parker, a specialist in skin diseases. Dr. Parker diagnosed the rash condition as contact dermatitis with a secondary neurodermatitis. He treated the decedent thereafter until the latter's death, which occurred on August 9, 1950, when he was sixty years of age. The immediate cause of death was listed on the death certificate as coronary thrombosis.

The single assignment of error is that the trial court erred in holding that the evidence was insufficient to war-

rant submitting the case to the jury. In reviewing this ruling of the trial court, we are bound by the rule stated by this court in *Mutti v. Boeing Aircraft Co.*, 25 Wn. (2d) 871, 172 P. (2d) 249, as follows:

"A challenge to the sufficiency of the evidence, or a motion for nonsuit, admits the truth of the plaintiff's evidence and all inferences which reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the defendant, and in the light most favorable to plaintiff. In the determination of such challenge or motion, even though the plaintiff's evidence is in some respects unfavorable to him, he is not bound by the unfavorable portion of such evidence, but is entitled to have his case submitted to the jury on the basis of the evidence which is most favorable to his contention. . . ."

See, also, *Dayton v. Department of Labor & Industries*, 45 Wn. (2d) 797, 278 P. (2d) 319.

The ultimate question before the court is whether there is sufficient medical testimony in the record to establish *prima facie* a causal relationship between the industrial injury and the subsequent dermal condition. This causal relationship must be established by medical testimony. *Cyr v. Department of Labor & Industries*, 47 Wn. (2d) 92, 286 P. (2d) 1038; *Dayton v. Department of Labor & Industries, supra.*

Dr. Joseph A. Benson, a dermatologist, was the only medical expert called to testify on behalf of appellant. He testified that he had treated the decedent for a condition of psoriasis in 1947 and 1948. He defined psoriasis as "a chronic sub-acute inflammatory skin disease, cause unknown, incurable, not contagious and so forth." He further testified that at the time he was treating the decedent most of the psoriasis was about his legs, groin, and buttocks, with a little bit on his arms. He stated that the decedent during the four months of treatment became "fairly well."

Dr. Benson had not seen the decedent during the last two and a half years of his life. When it became necessary for appellant to establish a causal relationship between the leg cut sustained by the decedent and the dermal condition which later developed, Dr. Benson gave his opinion in re-

sponse to a hypothetical question. His answer in response to this question is as follows:

"This gentleman *may have* had a contact dermatitis. It is not far [fair] to assume this contact dermatitis having relieved him from his employment should have continued unless the gentleman has had an allergic background or predisposition to it. It is *much more plausible* that it is a serous form of erythroderma. It is well know [n] that psoriasis is one of a half dozen diseases that follow *Koebner's phenomena,* it occurs in place of injury. . . . With that background, it is rather, it follows to me or any dermatologist, this *can possibly, probably* be erythroderma exfoliation following an injury. . . . It is caused by a number of diseases but in this particular case it would be *plausible to assume* it was caused by psoriasis instead of neurodermatitis or mycosis. . . . So we are *assuming* that this man had an exfoliative dermatitis covering from head to feet. We know he had psoriasis before this time. It is logical to *assume* these other diseases should not be— in my mind—should not be admitted fairly *if we were hypothesizing* on this exfoliative dermatitis. Exfoliation means to scale. . . . since this gentleman is predisposed to psoriasis and psoriasis is an incurable disease, *anything might precipitate* an attack. They *may* invalid spontaneously, may stay well for another year or five years. It *may* go into an exfoliative dermatitis or simply discomfort type. We *assume* in this particular man, the sequence of events following his injury, that *Koebner's phenomena should follow,* it precipitated an attack of psoriasis and kept on going. Q. Again assuming the facts of this hypothetical question to be true, that is your opinion as I understand what has happened? A. That is the *most plausible explanation* for his exfoliative dermatitis." (Italics ours.)

 Viewing this testimony in the light most favorable to appellant, it does not meet the test applied in *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries,* 26 Wn. (2d) 233, 173 P. (2d) 786, where the court said:

"The general rule, from which this court has never deviated, is stated in 135 A.L.R. 517, as follows:

" 'It appears to be well settled that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testi-

mony as to possibility is meant testimony in which the witness asserts that the accident or injury "might have," "may have," or "could have" caused, or "possibly did" cause the subsequent physical condition or death or that a given physical condition (or death) "might have," "may have," or "could have" resulted or "possibly did" result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal relation in question and does not include words indicating the probability or likelihood of its existence.'

"In *Anton v. Chicago, M. & St. P. R. Co.*, 92 Wash. 305, 159 Pac. 115, this court expressed its views with respect to such evidence, in the following language:

" 'Taking the opinion of the witness [a medical man] for the appellant, as quoted above, at its full worth, we think it is no more than a statement of a possibility or possibly a probability, more or less remote, that the tuberculosis is a result of the injury. This is not enough. The law demands that verdicts rest upon testimony and not upon conjecture and speculation. There must be some proofs connecting the consequence with the cause relied upon.' "

See, also, *Ehman v. Department of Labor & Industries*, 33 Wn. (2d) 584, 206 P. (2d) 787; *Boyer v. Department of Labor & Industries*, 160 Wash. 557, 295 Pac. 737.

At best, Dr. Benson's testimony is assumption pyramided upon assumption, amounting to mere speculation and conjecture.

■ Even if it be assumed *arguendo* that the decedent at the time of his death was permanently and totally disabled, there is no medical testimony as to the probability of its having been caused by the industrial injury. Dr. Benson was given ample opportunity to state that there was, or probably was, a causal relationship between the leg cut sustained by the decedent and the subsequent dermal condition, but he did not do so. Rather, he stated that "anything might precipitate an attack," and made it clear that he was merely "assuming" that the decedent had an exfoliative dermatitis.

■ Dr. Benson also assumed that "Koebner's phenomena" should follow the injury. Though appellant contends

that Dr. Benson explained what "Koebner's phenomena" was, our examination of the record fails to disclose any explanation or definition of this medical term. Further, no mention of this phenomena, its existence, or effect was included in the hypothetical question, nor was there any evidence concerning it except the witness' unexplained reference to it. This point is especially significant, since Dr. Benson assumed that the end result was exfoliative dermatitis, basing his opinion upon the further assumption that "Koebner's phenomena" *should* follow the injury.

In *Berndt v. Department of Labor & Industries,* 44 Wn. (2d) 138, 265 P. (2d) 1037, this court said:

"That an analysis of the testimony of the expert in this case shows that, for the purpose of forming his opinion, he assumed facts and situations not included in the hypothetical question and as to which there was no supporting evidence. The trial court properly concluded that the expert's opinion was based upon speculation, conjecture, and guesswork."

Here, Dr. Benson, while he had seen the decedent about a year and a half prior to his leg injury, had not seen him during the time referred to in the hypothetical question. Although he was qualified to express an opinion in response to a proper hypothetical question, his assumption of certain material facts not included therein and not necessarily inferable therefrom, nor established by the evidence, destroys the validity of his testimony under the rule followed in the *Berndt* case. See, also, *Cyr v. Department of Labor & Industries, supra.*

Our search of the entire record, viewed in the light most favorable to appellant, discloses that the only medical testimony tending to show that there was a causal relationship in this case between the injury and the subsequent dermal condition was that of Dr. Benson. This testimony, upon which appellant relies to make a *prima facie* case, was so uncertain, due to inadequacy of clear definition of the medical terms used, that a jury of laymen could only speculate as to the meaning of the expert opinions stated by Dr. Benson.

We, therefore, hold that the testimony of Dr. Benson was not of sufficient probative value to establish a causal relationship between the injury sustained by the decedent and his subsequent dermal condition.

Lastly, appellant's contention that decedent's death was proximately caused by the injury sustained in the course of his employment may be disposed of without extended discussion. Since appellant has not made a *prima facie* showing by medical testimony that the injury was a cause which directly set in motion the chain of events which brought about the death, the necessary causal relationship between the injury, the dermal condition, and the *death* has not been sufficiently established to require the case to be submitted to a jury.

Therefore, the case of *Hurwitz v. Department of Labor & Industries*, 38 Wn. (2d) 332, 229 P. (2d) 505, relied upon by appellant, concerning totally disconnected proximate causes, is not in point. Nor is that line of cases applicable which hold that, where an industrial injury lights up or makes active a latent or quiescent infirmity or weakened physical condition occasioned by disease, the injured workman is entitled to compensation. As examples of such cases, see *Merritt v. Department of Labor & Industries*, 41 Wn. (2d) 633, 251 P. (2d) 158, and cases cited; *Dayton v. Department of Labor & Industries*, *supra*.

The decision of the board of industrial insurance appeals is *prima facie* correct, and the burden is upon the party attacking the decision to produce sufficient substantial facts, as distinguished from a mere scintilla of evidence, to make a case for the jury. *Rambeau v. Department of Labor & Industries*, 24 Wn. (2d) 44, 163 P. (2d) 133. See, also, *Stampas v. Department of Labor & Industries*, 38 Wn. (2d) 48, 227 P. (2d) 739.

Since we have held that the evidence was insufficient to establish *prima facie* a causal relationship between the decedent's injury and either his alleged total permanent

disability or his death, the trial court was correct in entering judgment dismissing the action.

Judgment affirmed.

HAMLEY, C. J., SCHWELLENBACH, FINLEY, and OTT, JJ., concur.

June 13, 1956. Petition for rehearing denied.