[No. 45681. En Banc. October 4, 1979.]

SACRED HEART MEDICAL CENTER, *Respondent,* v. NORMA JEAN CARRADO, *Petitioner.*

Campbell, Johnston & Roach and Patrick T. Roach, for petitioner.

Winston, Cashatt, Repsold, McNichols, Connelly & Driscoll and Michael J. Cronin, for respondent.

ROSELLINI, J.—The petitioner filed a claim with the Department of Labor and Industries (Department), alleging that she had contracted hepatitis as a result of her employment as a registered nurse in an intensive care unit at the respondent medical center. When the Department rejected her claim, she appealed to the Board of Industrial Insurance Appeals (Board). A hearing examiner heard the petitioner's evidence, consisting of her testimony and that of two medical witnesses, and granted the respondent's motion to dismiss, ruling that the petitioner had not proved by a preponderance of the evidence that the disease from which she suffered rose naturally and proximately out of her employment. Reviewing that ruling, the Board reversed and allowed the claim. Upon the respondent's appeal to the Superior Court, the jury upheld the decision of the Board. A further appeal to the Court of Appeals, Division Three, resulted in a reversal of the judgment on the verdict. 20 Wn. App. 285, 579 P.2d 412 (1978).

The question before the court is whether the medical testimony was sufficient to sustain a finding by the Board and by the jury that the petitioner's hepatitis was attributable to her employment. We answer in the affirmative.

Medical testimony offered by the petitioner showed that hepatitis is a disease which is transmitted by contact with body fluids, including blood, and wastes of a person who either has the disease or is a carrier of it. A carrier may display no symptoms of the disease. There is a greater probability that a nurse working in a hospital, and particularly in an intensive care unit, will contract the disease than there is that a person employed in some other occupation will do so.

One of the doctors was willing to state unequivocally, in answer to a hypothetical question, that the odds were overwhelmingly in favor of the petitioner's having contracted the disease at the medical center. However, the doctor was asked to assume, among other facts, that another nurse at the center had hepatitis. This fact was not proved at the hearing, and while the Board did not discredit the doctor's opinion because of it, the Superior Court granted the respondent's motion to strike that portion of his testimony and it was not submitted to the jury.

The other doctor, while agreeing that a nurse in the petitioner's position is exposed to a greater risk of the disease than persons who do not work in such an environment, refused to give a direct opinion as to the probability that she contracted the disease at the center.[1]

Both doctors agreed that it is virtually impossible to pinpoint the precise source of a given case of hepatitis, since carriers may not display symptoms of the disease. One of the doctors stated that it is rare that a person suffering from the disease will be hospitalized, since treatment can be administered adequately outside that environment. From this testimony, it can be inferred that the disease is

---

[1]As the Superior Court judge noted, this refusal appears to have been inspired by a misunderstanding of the question, since the doctor's answer was that he could not determine whether she got the disease inside or outside the hospital. In other words, he appears to have thought that he was being asked to state with certainty what the source of her disease was, when in fact he was being asked to answer in terms of probabilities.

transmitted in hospitals primarily by carriers, rather than by persons displaying symptoms.

The petitioner's testimony showed that she had been employed at the center for more than the normal period of incubation; that her duties required daily handling of the fluids and excrements of patients; that on one occasion she had been bitten by a patient; and that the handling of needles and other medical equipment resulted in occasional small cuts and punctures on the hands. Her evenings were usually spent at home, where she lived a quiet life alone, and her attendance at public functions was confined to an occasional movie. She knew of no exposure to the disease which she might have had outside the hospital.

The Board attached no significance to the alleged but unproven fact that another nurse had the disease, focusing its attention instead on the evidence that hepatitis can be transmitted by a carrier who does not have an active case of the disease and that the risk of contracting the disease is greater in a hospital than outside, a fact which the Board observed should be "rather obvious." As we have previously noted, the jury's verdict affirming the Board was reached without considering the opinion of the doctor who was asked to assume that another nurse had the disease.

In the Court of Appeals, the respondent argued that an award cannot be sustained in the absence of a medical opinion that the disease or condition probably, or more likely than not, arose out of the claimant's employment. That court, while acknowledging that in a proper case circumstantial evidence may be considered in conjunction with medical testimony in arriving at the source of a disease, concluded that the claim should be denied because the petitioner had failed to show that any person with whom she came in contact at the hospital had the disease of hepatitis.

In reaching this conclusion, the Court of Appeals quite evidently overlooked the testimony that a carrier of the disease may be undetectable as such. If the petitioner contracted the disease from such a person, the fact that there

was at the hospital another person who had the disease and manifested the symptoms would be entirely irrelevant. While such proof might afford room to infer that there was an increased opportunity to contract the disease, the medical testimony which was presented was sufficient to support an inference that the petitioner did come in contact with a carrier at the hospital, even though that carrier was not recognizable as such.

■ It must be kept in mind that the industrial insurance act, while it changes the common law, is remedial in nature and is to be liberally applied to achieve its purpose of providing compensation to all covered persons injured in their employment. That purpose is set forth in RCW 51.04-.010.

Furthermore, the petitioner's claim reached the Court of Appeals supported by two presumptions, that the findings and decision of the Board, not having been rejected by the jury, were correct (RCW 51.52.115), and that the verdict was correct.

■ It is generally held that the evidence in a workmen's compensation case will be regarded as sufficient where the circumstances shown tend to establish the ultimate facts in issue or provide a basis from which they reasonably may be inferred. 82 Am. Jur. 2d *Workmen's Compensation* § 533 (1976). As is revealed in 1 A. Larson, *The Law of Workmen's Compensation* § 8.50 (1978), a number of courts have allowed recoveries where the evidence showed that the claimant's working environment involved an increased risk of contraction of a disease. In *Roe v. Boise Grocery Co.*, 53 Idaho 82, 21 P.2d 910 (1933), compensation was awarded for the death from Rocky Mountain spotted fever of a salesman whose duties required frequent trips through territory infested with wood ticks, although there was also evidence of two personal trips into that territory. The California Appellate Court allowed recovery for the death of an employee who had been sent to Peru during a typhoid epidemic to which foreigners would be peculiarly susceptible, and had contracted the disease. *Fidelity & Cas. Co. v.*

*Industrial Accident Comm'n,* 84 Cal. App. 506, 258 P. 698 (1927). And in *Lothrop v. Hamilton Wright Organizations, Inc.,* 45 App. Div. 2d 784, 356 N.Y.S.2d 730 (1974), an employee sent into Bolivia to take photographs, who contracted infectious viral hepatitis upon his return, was held to have contracted the disease as a result of his exposure to deplorable sanitary conditions. Even though the etiology of polio was obscure, a nurse who worked in a polio ward and became ill with the disease was allowed to recover upon a showing that the incidence of the disease is higher among nurses and others constantly in contact with the disease. *Industrial Comm'n v. Corwin Hosp.,* 126 Colo. 358, 250 P.2d 135 (1952).

While some courts have taken a more conservative approach, as Larson's and an annotation in 20 A.L.R. 4 (1922), disclose, we believe that the spirit and intent of the industrial insurance act is better served by the liberal philosophy expressed by these courts.

We are mindful that medical testimony forms a vital part of a claimant's proof, particularly where it involves matters which are beyond the knowledge and understanding of laymen. Accordingly, we have adhered to the rule that the causal connection between a claimant's physical condition and his employment must be established by such testimony. *Ehman v. Department of Labor & Indus.,* 33 Wn.2d 584, 206 P.2d 787 (1949); *Parr v. Department of Labor & Indus.,* 46 Wn.2d 144, 278 P.2d 666 (1955). We have also said that such medical testimony must show a greater probability of a causal relation and not a mere possibility. *Seattle–Tacoma Shipbuilding Co. v. Department of Labor & Indus.,* 26 Wn.2d 233, 173 P.2d 786 (1946).

Of course, such causation is usually shown by the eliciting of medical opinions upon the particular issue, but we do not read our cases as requiring in every case and under any and all circumstances the production of a medical opinion upon the ultimate issue. It is sufficient if the medical testimony *shows* the causal connection. If, from the medical testimony given and the facts and circumstances proven by

other evidence, a reasonable person can infer that the causal connection exists, we know of no principle which would forbid the drawing of that inference. *See Seattle–Tacoma Shipbuilding Co. v. Department of Labor & Indus., supra* at 242.

Here the medical testimony showed that there is generally a greater probability that a person in the petitioner's employment will contract hepatitis than there is that someone in another employment will do so. In other words, there is a greater risk of getting the disease when one is employed in a hospital. The Board and the jury were entitled to consider this evidence in conjunction with the petitioner's uncontradicted and undiscredited testimony that none of her other activities involved such exposure, and to reach the conclusion that, more likely than not, the disease resulted from contact with a carrier in the hospital.

The decision of the Court of Appeals is reversed and the judgment on the verdict is reinstated.

UTTER, C.J., WRIGHT, DOLLIVER, and HICKS, JJ., and RYAN, J. Pro Tem., concur.

STAFFORD, J. (dissenting)—I agree with the majority that the issue is "whether the medical testimony was sufficient to sustain a finding by the Board and by the jury that the petitioner's hepatitis was attributable to her employment." Put another way, the question is whether there is a causal connection between petitioner's illness and her employment. I also agree with the majority that the causal connection between petitioner's physical condition and her employment must be established by medical testimony based upon *probabilities* rather than mere *possibilities.* Consequently, if petitioner fails to establish by *medical testimony* that the disease is *probably* related to her employment, she cannot recover.

In an effort to reach the desired result, the majority has tolerated too many legal and factual gaps in logic. They

have acknowledged the basic rules only to studiously circumvent them. Therefore, I must dissent.

While they initially acknowledged petitioner's burden, the majority retreats from that acknowledgment by suggesting medical opinion is not necessary on the ultimate issue in all cases. It is said to be sufficient that medical testimony merely "*shows* the causal connection." Thus, the majority suggests a causal connection may be established by inference, leaving the unwarranted implication that the required proof may be somewhat less if an inference is involved. This, of course, is incorrect. The proposition is not even supported by the majority's case citation. In fact, the cited case makes it abundantly clear a claimant may recover only "where a causal connection between an industrial injury and a subsequent physical condition is established, *with at least some degree of probability.*" (Italics mine.) *Seattle–Tacoma Shipbuilding Co. v. Department of Labor & Indus.*, 26 Wn.2d 233, 242, 173 P.2d 786 (1946). *See also Sawyer v. Department of Labor & Indus.*, 48 Wn.2d 761, 296 P.2d 706 (1956). The evidence must be of sufficient probative value to remove the question of causal relation from the field of speculation and surmise. The evidence must present something more than a mere possibility or conjecture. *Seattle–Tacoma*, 26 Wn.2d at 242. As stated by that case at page 241:

The general rule, from which this court has never deviated, is stated in 135 A. L. R. 517, as follows:

"It appears to be well settled that medical testimony as to the possibility of a causal relation between a given accident or injury and the subsequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testimony as to possibility is meant testimony in which the witness asserts that the accident or injury 'might have,' 'may have,' or 'could have' caused, or 'possibly did' cause the subsequent physical condition or death or that a given physical condition (or death) 'might have,' 'may have,' or 'could have' resulted or 'possibly did' result from a previous accident or injury—testimony, that is, which is confined to words indicating the possibility or

chance of the existence of the causal relation in question and does not include words indicating the probability or likelihood of its existence."

The subtle but significant change in the burden of proof, for which the majority opts, is not based on any past or current law of this state. Rather, it stems from a series of *foreign* cases based on philosophical underpinnings which the majority claims better serve the spirit and intent of the industrial insurance act of *this* state. I totally disagree.

The majority does not claim, and my review does not establish, that the industrial insurance laws of the foreign jurisdictions relied on are the same or even similar to our own. In fact, from as early as *Stertz v. Industrial Ins. Comm'n,* 91 Wash. 588, 604, 158 P. 256 (1916) to as late as *Thompson v. Lewis County,* 92 Wn.2d 204, 208–09, 595 P.2d 541 (1979) we consistently have held that our industrial insurance act is unique and that the opinions of other states' courts are of little assistance as an interpretive medium. Yet, without overruling a single case, the majority would have us abandon the basic burden of proof long accepted in this jurisdiction. They would have us make this important change based upon opinions of a few foreign jurisdictions. By the proposed subtle change in emphasis the kind of evidence necessary to sustain a claimant's burden of proving the causal connection between a disease or injury and employment would be changed. However subtly accomplished, I cannot agree with the change or the foreign cases cited in support.

I am also concerned by the undue emphasis the majority places upon the medical testimony of two doctors. While their testimony will be discussed more fully later, it is sufficient to say at this point that the testimony is accepted uncritically with the oversimplistic view that the findings and decision of the Board, having been accepted by the jury, must be deemed correct. This view ignores the fact that important medical testimony considered by the Board was *stricken* by the trial court thus *never reaching the jury.*

The striking of such testimony brings into play a second portion of the rule on prima facie correctness of Board findings and decisions. The rule does not apply where there is no evidence to support an essential part of the claim. This rule prevents the fiat of the Board from being substituted for evidence. There must be substantial evidence to support the Board before its findings and decision are deemed prima facie correct. *Jepson v. Department of Labor & Indus.*, 89 Wn.2d 394, 401, 573 P.2d 10 (1977), *see also* the numerous supporting cases cited therein at page 401. Consequently, we must return to the issue as originally framed by the majority and examine critically the medical testimony furnished by the two doctors. The ultimate question is whether the medical testimony *that actually reached the jury* is sufficient to sustain a finding by the jury that petitioner's hepatitis was causally connected to her employment. This question must be answered in the negative.

The majority emphasizes the fact that Dr. Carrado testified in the Board record that the odds were overwhelmingly in favor of the claimant having contracted the disease at the hospital (her place of employment). As acknowledged by the majority, however, the statement was made in answer to a hypothetical question which assumed that another nurse at the hospital had hepatitis. This fact was never established at the Board hearing, however. Since the hypothetical question assumed evidence never established, the trial court *struck the entire question and answer thereto.*[2] Thus, contrary to the majority's view, the statement by Dr. Carrado, upon which the majority relies, *never did reach the jury.* I grant that on motion for a new trial the judge apparently had second thoughts and wondered whether it might have been better to let a portion of the

---

[2] The Board record used by the trial judge shows clearly at pages 64–68 that he wrote on the record in pencil that the objection to the hypothetical question was sustained and in addition crossed out all of the offending material. This includes the statement, "The odds are overwhelmingly in favor of it."

doctor's testimony stand rather than having excluded it. But, it was stricken and no one actually has contended on appeal that all or any part of the answer to the hypothetical question should have gone to the jury. Since no error has been assigned, that issue is not before us. Consequently, we are faced with the accomplished fact that *none* of the doctor's testimony on causal connection was heard by the jury.

The testimony of Dr. Carrado having failed to establish the necessary causal connection between petitioner's disease and her employment, the only remaining source of medical proof was Dr. Stacey. The majority has conceded Dr. Stacey "refused to give a direct opinion as to the probability that she contracted the disease at the center." The majority seems to suggest, however, that the so–called refusal stems from his having misunderstood the question. Whether this assumption is correct or incorrect is irrelevant. The fact remains that, whatever the reason, Dr. Stacey did not establish any causal connection. In fact, Dr. Stacey's position went beyond the mere "refusal" mentioned by the majority. The doctor's statement was actually *a positive disclaimer that any logical causal connection existed.* He testified as follows:

> In the case of Norma Jean Carrado I think *it is conjecture* as to whether she obtained her hepatitis from a patient on her job in some way in the hospital or from the outside . . . *it's impossible to determine* in a single instance *the mode by which any person develops hepatitis.*

(Italics mine.) While the doctor acknowledged that the risks of getting hepatitis had been shown to be greater in hospital dialysis personnel than in the general public, he went on to say, in the case of Mrs. Carrado (and it is, after all, her case that is before the court):

> In this case I do not think there is any way to determine whether the lady's hepatitis was contracted within or out of the hospital.

As a result it is clear there was an absence of medical evidence to establish the necessary causal connection. Moreover, Dr. Stacey's testimony established absolutely that it was impossible to make the causal connection in Mrs. Carrado's case.

As a last resort, the majority points to the fact that hepatitis *may be* contracted from undetectable carriers. Thus, it is said to be inferable from the nature of her work, she in fact *did contract* it from such a carrier in the hospital. While this gap in logic actually begs the question, the majority attempts to jump the gap by asserting that the industrial insurance act "is to be liberally applied to achieve its purpose of providing compensation to all covered persons injured in their employment."

I agree with the foregoing general statement of the law. However, I disagree with the majority's application of it in this case. As we said in *Ehman v. Department of Labor & Indus.*, 33 Wn.2d 584, 595, 206 P.2d 787 (1949):

> that *rule does not apply to questions of fact* but to matters concerning the construction of the statute, *and that the principle does not dispense with the requirement that those who claim benefits under the act must, by competent evidence, prove the facts upon which they rely.*

(Italics mine.) There is no such competent medical evidence in the record. The mere fact that an issue is difficult to establish does not lessen or change the burden of proof.

In sum, there is no medical testimony in the record upon which the jury could have based a determination that petitioner's hepatitis was causally connected with her employment. The Court of Appeals should be affirmed.

BRACHTENBACH and HOROWITZ, JJ., concur with STAFFORD, J.