[No. 9261-5-III. Division Three. May 9, 1989.]

MAX A. DOBBINS, *Appellant*, v. COMMONWEALTH ALUMINUM CORPORATION, *Respondent.*

*Todd M. Rutledge* and *Boettcher, LaLonde, Kleweno, Rutledge & Jahn, P.S.,* for appellant.

*Darrell K. Smart* and *Gavin, Robinson, Kendrick, Redman & Pratt, P.S.,* for respondent.

SHIELDS, J.—Max Dobbins' claim for industrial insurance was dismissed on summary judgment motion by Commonwealth Aluminum Corporation (Comalco). The trial court concluded he failed to establish a prima facie medical case of a work related disability. We reverse and remand for trial.

On January 24, 1985, Max Dobbins consulted an Oregon chiropractor, Dr. Georg–Karl Neller, because of pain in his right knee. He claimed he had injured it when he slipped and fell while dismounting a switch engine at work. Dr. Neller determined there was swelling, pain with weight bearing, a loss of motion, and substantial crepitus in his knee joint. Mr. Dobbins had an obvious surgical scar on that knee, the result of a motorcycle accident which had occurred many years prior. Dr. Neller initially diagnosed the problem as a bad strain–sprain, and attributed Mr. Dobbins' condition to the industrial injury.

Dr. Neller advised Mr. Dobbins to file a workers' compensation claim, but Mr. Dobbins refused, believing he might be reprimanded by Comalco for doing so. In order to secure the needed medical attention, Dr. Neller filed a claim with Mr. Dobbins' health insurance company, in

which he indicated Mr. Dobbins' condition was not work related.

Mr. Dobbins, on referral by Dr. Neller, consulted Dr. Geoffrey Baum, an osteopath in Portland, on April 10, 1985, but did not inform him of the accident in January 1985. Dr. Baum thus assumed the motorcycle accident was the primary cause of his condition and the subsequent knee surgery for removal of a meniscus. Dr. Baum's initial diagnosis included the finding of a bony mass, the result of the removal of the meniscus and the formation of bone spurs. Crepitance was also noted and was an indication of degenerative changes within the patella–femoral joint. Dr. Baum also found a marked narrowing of cartilage at the medial joint line, which also would have occurred over a course of years. He concluded that walking over uneven ground, whether at the railroad yard, or during hunting or fishing, or jump starting a motorcycle could predispose one to this condition. His final diagnosis was "degenerative arthritis, medial aspect, right knee, as well as degeneration at the patella–femoral joint." Surgery was performed on April 22, 1985, and included arthroscopic debridement, defined as insertion of a long fiber–optic rod into the knee through small puncture wounds. The surgery confirmed Dr. Baum's initial diagnosis.

Mr. Dobbins filed a claim for workers' compensation against Comalco in July 1985 which was rejected by the Department of Labor and Industries on August 20, 1985. Reconsideration was denied on December 24, 1985; on January 16, 1986, notice of appeal was given to the Board of Industrial Insurance Appeals.

The proposed decision and order of an administrative law judge on April 15, 1987, reversed the Department's order, finding Mr. Dobbins had suffered an industrial injury in January 1985 and that the Department should accept responsibility for the injury. The Board reversed that proposed order on October 30, 1987, noting Mr. Dobbins' knee condition was not causally related to nor aggravated by any injury occurring during his course of

employment. Upon appeal to superior court, the action was dismissed on Comalco's motion for summary judgment, the court noting Mr. Dobbins had failed to establish prima facie medical causation related to an industrial injury. This appeal followed.

Did Mr. Dobbins present sufficient medical evidence through the testimony of a doctor of chiropractic and/or a doctor of osteopathy to raise a question of fact whether his knee condition was caused or made symptomatic by the alleged industrial injury?

Mr. Dobbins urges this court to consider and rely upon the testimony of Dr. Neller, a chiropractor, licensed to practice in Oregon where he is qualified to treat knee injuries. He relies on *Carvell v. Winn*, 154 So. 2d 788 (La. Ct. App.), *aff'd*, 245 La. 61, 156 So. 2d 603 (1963), which held a chiropractor, licensed in Texas, could qualify as an expert witness in Louisiana, which did not legally recognize the practice of chiropractic. However, that case is distinguishable because the only issue before the Louisiana court was damages.

The trial court has broad discretion to admit or exclude expert testimony and this court will sustain the trial court's decision unless it is manifestly erroneous. *Taylor v. Burlington N. R.R.*, 787 F.2d 1309, 1315 (9th Cir. 1986). Chiropractic in Washington is defined at RCW 18.25.005:

> For the purpose of chapters 18.25 and 18.26 RCW, the term "chiropractic" shall mean and include that practice of health care which deals with the detection of subluxations . . . by adjustment or manipulation of the articulations of the vertebral column . . . *Provided*, That no chiropractor shall prescribe or dispense any medicine or drug nor practice . . . surgery . . .

Contrary to Oregon, Washington does not include knee injuries within the practice of chiropractic.

WAC 296–20–01002 defines a chiropractor as a doctor or practitioner, but not as a physician. WAC 296–20–015 provides only that treatment which falls within the scope and field of the practitioner's license will be allowed.

Examinations or evaluations of permanent bodily impairment can be made only by *physicians* currently licensed to practice medicine and surgery. *Brannan v. Department of Labor & Indus.,* 104 Wn.2d 55, 59, 700 P.2d 1139 (1985). Thus, there is no basis on which to conclude the trial court abused its discretion in refusing to consider Dr. Neller's testimony for purposes of establishing medical causation. However, we do find sufficient medical evidence to raise a question of fact with respect to causation in the testimony of Dr. Geoffrey Baum, the treating osteopath.

As noted in *Sacred Heart Med. Ctr. v. Carrado,* 92 Wn.2d 631, 635, 600 P.2d 1015 (1979), the evidence in a workers' compensation case will be regarded as sufficient if the circumstances shown tend to establish the ultimate facts in issue or provide a basis from which they reasonably may be inferred. 82 Am. Jur. 2d *Workmen's Compensation* § 533 (1976). The causal connection between the claimant's physical condition and the industrial injury must be established by medical testimony. *Carrado,* at 636. *See also Bennett v. Department of Labor & Indus.,* 95 Wn.2d 531, 533, 627 P.2d 104 (1981).

Dr. Baum made several conclusions with respect to Mr. Dobbins' condition and the injury in 1985. These conclusions were based upon information he obtained after surgically treating Mr. Dobbins in April and involved the causal effect of the industrial injury to his patient's condition. Dr. Baum stated he could not relate any particular degree of crepitance, the buttressing spurs, or the patient's history of meniscectomy to the industrial injury, nor did he note any tears in the ligaments or cartilage of the knee which would suggest a traumatic event. However, Dr. Baum did state:

Q. Doctor, you'd see—I believe you testified you've obtained additional history since April of 1985 relative to Mr. Dobbins; is that right?
A. Yes.
Q. Okay. Since obtaining the additional history, do you have an opinion at this time in terms of reasonable medical probability as to the specific or general time period

in which Mr. Dobbins first noted the symptoms that he was experiencing when he saw you in April of '85?

A. The—I hope that I'm, in this response that I can answer your question. The patient admits to working for the railroad from 1971 to '72 and was essentially asymptomatic. He had a twisting injury of his right knee in 1974, which caused a painful condition in his right knee, which subsequently resolved. He again had a twisting injury to his right knee while at work in 1981, which had apparent complete resolution. And in 1985 he again had injury to his right knee and from that time forth has had persistent painful right knee.

Later, he responded:

Q. Doctor, assuming that there was a traumatic fall in January of 1985 suffered by Mr. Dobbins on the job, and that we note at that point a significant increase in his symptoms, would that make sense within your understanding of this man's injuries?

A. Yes.

. . .

A. Well, from the, from the history it's apparent to me that this patient had a, an arthritic condition in his right knee. It has been present for a period of years. I cannot say specifically how many years or the exact initial event leading up to the, his current condition, and through the various traumas that he has sustained in his life, he developed an occasionally symptomatic right knee condition, which in 1985 became persistently symptomatic to the point where he has not been without discomfort since my initial evaluation of him in April of 1985.

▮ In reviewing a summary judgment motion, this court must review the facts in a light most favorable to the non-moving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); *Galladora v. Richter,* 52 Wn. App. 778, 781, 764 P.2d 647 (1988). It has been held in an unbroken line of cases that if an injury lights up or makes active a latent condition occasioned by disease, then the resulting disability is to be attributed to the injury and not to the preexisting physical condition. *Miller v. Department of Labor & Indus.,* 200 Wash. 674, 682, 94 P.2d 764 (1939).

*See also Dennis v. Department of Labor & Indus.,* 109 Wn.2d 467, 471–72, 745 P.2d 1295 (1987).

Assuming the industrial injury occurred and Mr. Dobbins' condition was asymptomatic prior to January 1985, we conclude Dr. Baum provided sufficient medical testimony to create a question of fact as to whether the industrial injury lit up the asymptomatic condition. The evidence in support of a compensable claim also includes the testimony of Dr. Neller, which may be considered by the court as testimony of a lay witness. Additionally, other lay witnesses testified as to Mr. Dobbins' good health prior to January 1985. The weight to be given such testimony is for the jury to decide, *Bennett,* at 534, as is the equivocal nature of Dr. Baum's testimony. *Snyder v. Department of Labor & Indus.,* 40 Wn. App. 566, 576, 699 P.2d 256 (1985).

Mr. Dobbins has requested an award of attorney fees. We find no affidavit has been submitted detailing the amount of fees owed. Based on his failure to comply with RAP 18.1(c), the request is denied.

The order of dismissal on summary judgment is reversed and the cause is remanded for trial.

THOMPSON, C.J., and MUNSON, J., concur.