[No. 10810-4-III.    Division Three.    December 3, 1991.]

ERNEST P. JUDD, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, ET AL, *Respondents*.

472

*Jeffry K. Finer* and *Pat Stiley & Associates, P.S.,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Dennis J. Beemer, Daniel J. Judge,* and A. *Craig McDonald, Assistants,* for respondents.

SHIELDS, C.J. — Ernest P. Judd sought superior court review of a decision of the Board of Industrial Insurance Appeals affirming an order of the Department of Labor and Industries (DLI) denying his claim for industrial insurance benefits. The jury affirmed the Board's order. Mr. Judd appeals, contending the trial court erroneously instructed the jury when it substituted the word "doctor" for the word "physician" in the first sentence of instruction 6,[1] the "attending physician" instruction. We affirm.

In 1976 Mr. Judd began working in the accounting department at Lakeland Village, a residential facility for individuals with mental disabilities. Lakeland selected his name from a list of mentally handicapped workers. His initial supervisor was aware Mr. Judd suffered from profound psychiatric conditions which had persisted since at least age 18. A successor supervisor implemented changes in the accounting department beginning in 1981. Mr. Judd's work performance declined beginning in 1982. He received psychiatric services or was hospitalized for psychiatric problems during 18 of the 26 years between 1962 and 1988.

In May 1985 Mr. Judd admitted himself to Sacred Heart Medical Center's psychiatric unit where he was treated by Duane Green, Ph.D., a licensed clinical psychologist on the staff. He was discharged in June and again hospitalized in July 1985 for psychiatric problems. Dr. Green continued to treat Mr. Judd during these hospitalizations and following his discharge. Mr. Judd left his employment at Lakeland in July 1985. On August 30, 1985, he applied for industrial

---

[1]Instruction 6 reads:

"In cases under the Industrial Insurance Act of the State of Washington, special consideration should be given to the opinion of the plaintiff's attending doctor. You are not bound, however, by such an opinion. In determining the credibility and weight to be given such opinion evidence, you may consider, among other things, the education, training, experience, knowledge and ability of that doctor, the reasons given for the opinion, the sources of the doctor's information, together with the factors already given you for evaluating the testimony of any other witness."

insurance benefits, claiming an occupational disease within the meaning of RCW 51.08.140. He alleged his preexisting psychiatric disorder was aggravated by work-related mental stress.[2] In November 1985, William Allan, M.D., a psychiatrist, began treating Mr. Judd. In mid-1986, Robert Baxley, M.D., a psychiatrist, examined Mr. Judd on one occasion at the request of DLI.

The sole issue before us is whether the instruction to give special consideration to Mr. Judd's attending doctor rather than to Mr. Judd's attending physician was error.

Dr. Green testified Mr. Judd had a passive-aggressive personality disorder; was hospitalized in May 1985 due to increased family conflicts involving his daughter; and, his depression in May, June and July 1985 was attributable to his lifelong underlying personality disorder, rather than to his work. Dr. Allan testified "stress incidents" on the job caused Mr. Judd to be anxious, which in turn contributed to his depression, obsession and paranoid feelings toward his supervisor. Dr. Baxley testified Mr. Judd's work environment did not exacerbate his psychiatric condition; rather he was merely responding to work-related stress in a way consistent with his preexisting personality.

The testimony of the treating or attending physician in workers' compensation cases was first given special consideration in *Spalding v. Department of Labor & Indus.*, 29 Wn.2d 115, 186 P.2d 76 (1947). *Spalding*, at 128-29, stated:

> While we do not desire to be understood as laying down any hard and fast rule, it is our opinion that an attending physician, assuming of course that he shows himself to be qualified, who has attended a patient for a considerable period of time for the purpose of treatment, and who has treated the patient,

---

[2]*Department of Labor & Indus. v. Kinville*, 35 Wn. App. 80, 664 P.2d 1311 (1983) held a mental/mental occupational disease claim (preexisting mental disorder exacerbated by work-related mental stress) may be cognizable under certain circumstances. In 1988 the Legislature directed DLI to adopt a rule that claims based on mental conditions or mental disabilities caused by stress do not fall within the definition of occupational disease in RCW 51.08.140. DLI adopted WAC 296-14-300 on June 24, 1988. Neither the new statute nor the regulation applies to Mr. Judd's claim.

is better qualified to give an opinion as to the patient's disability than a doctor who has seen and examined the patient once.

Two principles underpin the validity of this "attending physician" instruction: (1) reliability of the witness' basis of knowledge and (2) the special competence of the witness to testify regarding medical matters.

Mr. Judd concedes an attending psychologist has the depth of experience with a particular patient to have a reliable basis of knowledge, but contends such a witness does not have special competence regarding medical matters; an attending psychologist, who may have a doctoral degree, is not a physician. His argument ignores Dr. Green's role as a mental health care provider both when treating Mr. Judd's psychiatric problems and when testifying before the Board.

■ Whether an expert witness is a licensed physician is an important factor to be taken into consideration, but is not dispositive here for the same reasons it is not dispositive in deciding whether an expert witness who is not a physician may testify in medical negligence cases. *Harris v. Groth*, 99 Wn.2d 438, 439, 663 P.2d 113 (1983) discussed the use of expert testimony in medical negligence cases as it relates to both the standard of care and causation, and held, "nonphysicians, if otherwise qualified, may give expert testimony in a medical malpractice case." It is a matter within the trial court's discretion. Per se limitations on the testimony of otherwise qualified nonphysicians are not in accord with the general trend in the law of evidence, which is away from reliance on formal titles or degrees. *Harris*, at 449. This trend is noted in 5A K. Tegland, Wash. Prac., *Evidence* § 289, at 382-83 (3d ed. 1989):

> The witness need not possess the academic credentials of an expert; practical experience may suffice. Training in a related field or academic background alone may also be sufficient. [ER] 702 states very broadly that the witness may qualify as an expert by virtue of knowledge, skill, experience, training, *or* education.

(Footnotes omitted.)

Other courts interpreting the word "physician" in the context in which it is used have included psychologists within that term. For example, the court in *Massey v. Manitowoc Co.*, 101 F.R.D. 304, 306 (E.D. Pa. 1983) stated:

> *[T]he study of mental health and thought processes is not within the exclusive domain of physicians.* The requirement that the examiner hold a medical degree may not always be necessary. So long as there are adequate assurances that the examiner is qualified to conduct the type of examination given, the purpose of Rule 35 will be satisfied.

(Italics ours.) In 1988 the Federal Rules of Civil Procedure were amended to allow examinations by "physician or psychologist". Fed. R. Civ. P. 35.

Mr. Judd's claim was confined to his mental health and thought processes. He sought and received care from Dr. Green, a licensed clinical psychologist, whose competence was not questioned at trial. The fact Dr. Green did not possess a physician's license did not prevent him from either providing care or from expressing his opinions before the Board; both were within the field of his expertise. It should not prevent his testimony from being given special consideration by the jury.

Instructions are sufficient if they (1) permit each party to argue its theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the trier of fact of the applicable law. *Farm Crop Energy, Inc. v. Old Nat'l Bank*, 109 Wn.2d 923, 933, 750 P.2d 231 (1988). Furthermore, the instructions to be given in a particular case are governed by the facts proved in the case. *Harris*, at 447; *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 267, 401 P.2d 982 (1965).

Here, the record does not reflect the instruction prevented the parties from arguing their theories of the case. Nor was the instruction misleading. The rationale for the "attending physician" instruction expressed in *Spalding*, at 128-29 applies to the facts here: an attending health care provider is better qualified to give an opinion than a health care provider who has seen the patient on only one occasion.

The instruction given did not instruct the jury to give special consideration to the DLI psychiatrist, Dr. Baxley, who had seen Mr. Judd on only one occasion, nor to disregard the testimony of his attending psychiatrist, Dr. Allan. Rather, it permitted the jury to give special consideration to the opinion of Mr. Judd's attending doctor; thus it included both the attending psychologist, Dr. Green, and the attending psychiatrist, Dr. Allan. It also informed the jury it was not bound by those opinions. The jury was free to disregard the opinions of one or all of the doctors.

The instructions when read as a whole properly instructed the jury on the applicable law governed by the facts of the case. The substitution of the word "doctor" for the word "physician" in the "attending physician" instruction was logical, reasonable, within the facts proven and a proper exercise of judicial discretion; it gave Mr. Judd the benefit of the extensive testimony presented by both of his attending mental health care providers.

The judgment affirming the Board's final order is affirmed.

MUNSON and THOMPSON, JJ., concur.