[No. 18612-8-II. Division Two. October 25, 1996.]

JAMES G. LOUSHIN, *Respondent*, v. ITT RAYONIER, *Appellant.*

*Janet L. Smith* and *Thomas G. Hall & Associates*, for appellant.

*Carol L. Casey* and *Casey & Casey, P.S.*, for respondent.

TURNER, J. — ITT Rayonier (ITT) appeals the reopening

of James Loushin's industrial insurance claim for back injuries. We are faced with two questions. First, can a chiropractor's testimony be used to establish aggravation of an injury? Second, did sufficient evidence support the court's findings that: (1) the aggravation of Loushin's injury was causally related to his industrial injury; and (2) the aggravation required medical treatment? We hold that chiropractic testimony can establish aggravation and that sufficient evidence showed a causal relation between the injury and the aggravation, which did require treatment. We affirm.

## FACTS

Loushin fell while working as a logger for ITT on April 11, 1984. Loushin filed a claim for industrial insurance benefits. The Department of Labor and Industries awarded him time-loss compensation and an award for permanent partial disability for cervical and lumbar impairment.

In September 1988, Loushin applied to reopen his case, claiming that his back condition had become aggravated.[1] The Department rejected the application and that decision was ultimately affirmed by the Clallam County Superior Court. In September 1991, Loushin again sought to reopen his case. He asked to receive a pension as a totally and permanently disabled worker or to receive further medical treatment. His claim was again denied.[2]

Loushin appealed to the Clallam County Superior Court. The trial court reversed the decision of the Board of Industrial Insurance Appeals, holding that "Loushin's condition causally related to the industrial injury of April

---

[1] If a claim is closed by way of a final order, the worker may apply to reopen the claim within seven years of the date the claim was first closed. *See* RCW 51.32.160; WAC 296-14-400.

[2] The denial was affirmed by the Board of Industrial Insurance Appeals.

11, 1984, became aggravated within the meaning of RCW 51.32.160." ITT appealed.

## ANALYSIS

### I

### Chiropractic Testimony Regarding Aggravation.

ITT contends that a chiropractor cannot provide the requisite "medical" testimony that a condition has worsened and that such aggravation is causally related to a prior industrial injury. To support its claim, ITT argues that: (1) administrative regulations provide that only physicians, the definition of which does not include chiropractors, can evaluate bodily impairments and the extent or degree of permanent bodily impairment or disability; and (2) case law prohibits chiropractors from testifying as to medical causation. ITT asserts that, without the chiropractor's testimony, Loushin failed to introduce sufficient medical evidence of aggravation and, therefore, the trial court should not have reopened this case. We disagree.

The industrial insurance act authorizes the reopening of a case if an aggravation of the disability occurs after the claim is closed. *See Wilber v. Department of Labor & Indus.*, 61 Wn.2d 439, 444, 378 P.2d 684 (1963); RCW 51.32.160(1)(a),[3] WAC 296-14-400.[4] To prevail on an aggravation claim, the claimant must establish the following elements by "medical testimony."

(1) The causal relationship between the injury and the

---

[3]"If aggravation, diminution, or termination of disability takes place, the director may, upon the application of the beneficiary, made within seven years from the date the first closing order becomes final . . . readjust the rate of compensation in accordance with the rules in this section . . . or in a proper case terminate the payment: PROVIDED, That the director may, upon application of the worker made at any time, provide proper and necessary medical and surgical services as authorized under RCW 51.36.010."

[4]"The director at any time may, upon the workers' application to reopen for aggravation or worsening of condition, provide proper and necessary medical and surgical services as authorized under RCW 51.36.010. . . ."

subsequent disability must be established by medical testimony.

(2) The claimant must prove by medical testimony, some of it based upon objective symptoms, that an aggravation of the injury resulted in increased disability.

(3) A claimant's medical testimony must show that the increased aggravation occurred between the terminal dates of the aggravation period.

(4) A claimant must prove by medical testimony, some of it based upon objective symptoms which existed on or prior to the closing date . . ., that his disability on the date of the closing order was greater that the supervisor found it to be.

*Phillips v. Department of Labor & Indus.*, 49 Wn.2d 195, 197, 298 P.2d 1117 (1956) (citations omitted). The phrase "medical testimony" means testimony by medical experts. *See, e.g., Stampas v. Dept. of Labor & Indus.*, 38 Wn.2d 48, 50, 227 P.2d 739 (1951). The trial court has broad discretion to admit or exclude expert testimony and we will sustain the trial court's decision unless it is manifestly erroneous. *See Dobbins v. Commonwealth Aluminum Corp.*, 54 Wn. App. 788, 791, 776 P.2d 139 (1989).

Here, the trial court decided that the chiropractor was qualified to provide expert medical testimony regarding aggravation. We affirm that decision. The cases, statutes and regulations dealing with aggravation of injuries do not define what constitutes "medical testimony" or who qualifies as a "medical expert." Accordingly, we rely on the common meaning of "medical" in affirming the lower court's conclusion that chiropractors are capable of providing "medical" testimony. *See, e.g., First Covenant Church v. Seattle*, 120 Wn.2d 203, 220, 840 P.2d 174 (1992) (in the absence of a statutory definition of a word, courts may resort to the plain and ordinary meaning of the word as found in a dictionary).

The term "medical" is defined by BLACK'S LAW DICTIONARY 982 (6th ed. 1991) as "[p]ertaining, relating or belonging to the study and practice of medicine, or the sci-

ence and art of the investigation, prevention, cure, and alleviation of disease." The practice of chiropractic in Washington includes "diagnosis or analysis and care or treatment of the vertebral subluxation complex and its effects, articular dysfunction, and musculoskeletal disorders. . . ." RCW 18.25.005(1). As part of his or her chiropractic diagnosis, a chiropractor is authorized to perform a physical examination, which may include diagnostic x-rays, to determine the appropriateness of chiropractic care or the need for referral to other health care providers. RCW 18.25.005(3). Using the above definition of "medical," it is clear that chiropractors provide "medical" services and it follows that chiropractors are capable of providing medical testimony on matters within their field of practice. As our Supreme Court recognized, it is a "well settled general principle that a chiropractor is competent to testify as an expert or medical witness on matters within the scope of the profession and practice of chiropractic." *Brannan v. Dept. of Labor & Indus.*, 104 Wn.2d 55, 63, 700 P.2d 1139 (1985). Following the edict that the Industrial Insurance Act be liberally construed in favor of the injured, RCW 51.12.010, we hold that chiropractic testimony may constitute "medical testimony" in aggravation cases.

Case law also indicates that physicians are not the only professionals that can provide medical testimony. For instance, in *Judd v. Department of Labor & Indus.*, 63 Wn. App. 471, 475-76, 820 P.2d 62 (1991), the court determined that, although a psychologist is not a physician, he or she may express his or her expert opinions concerning an industrial insurance claimant's psychiatric problems. The court relied, in part, on *Harris v. Groth*, which held that "nonphysicians, if otherwise qualified, may give expert testimony in a medical malpractice case." *Harris v. Robert C. Groth, M.D., Inc.*, 99 Wn.2d 438, 439, 663 P.2d 113 (1983).

Similarly, in *Goodman v. Boeing Co.*, 75 Wn. App. 60, 877 P.2d 703 (1994), *decided by*, 127 Wn.2d 401 (1995), the

court held that a nurse's training and experience qualified her as an expert on care needs, even though her testimony was "medical" in nature. The *Goodman* court recognized a trial court's discretion to follow the trend allowing non-physicians to testify on medical issues:

> Trial courts retain broad discretion in determining whether an expert is qualified to testify on health-related matters and will be reversed only for manifest abuse. Whether or not an expert is licensed to practice medicine is a factor, but not dispositive, in making this determination. Per se limitations on the testimony of otherwise qualified nonphysicians are not in accord with the general trend in the law of evidence, which is away from reliance on formal titles or degrees. . . . Training in a related field or academic background alone may also be sufficient.

*Goodman*, 75 Wn. App. at 81 (citations omitted).

Finally, the legislature recognizes that chiropractors can provide important medical testimony about industrial injuries. In 1993, it amended RCW 51.32.112, to allow chiropractors to conduct medical examinations to determine permanent disabilities:

> (2) Within the appropriate scope of practice, chiropractors licensed under chapter 18.25 RCW may conduct special medical examinations to determine permanent disabilities in consultation with physicians licensed under chapter 18.57 or 18.71 RCW. The department, in its discretion, may request that a special medical examination be conducted by a single chiropractor if the department determines that the sole issues involved in the examination are within the scope of practice under chapter 18.25 RCW. However, nothing in this section authorizes the use as evidence before the board of a chiropractor's determination of the extent of a worker's permanent disability if the determination is not requested by the department.

RCW 51.32.112; *see* LAWS OF 1993, ch. 515, § 4.

ITT argues that because the administrative regulations define "chiropractor" and "physician," and the term "medical" or "medicine" is used only in the definition of

"physician," only a physician can provide "medical" testimony. We disagree; especially when the testimony is related to back conditions within the scope of the chiropractic practice.

We also reject ITT's argument that WAC 296-20-200(2)[5] and -210(1)[6] mandate that only physicians can provide medical testimony concerning aggravation. These regulations deal with evaluation of *permanent partial disabilities*. They do not address what type of experts can establish *aggravation* of an industrial injury. Moreover, the Legislature's amendment of RCW 51.32.112, which recognizes the competence of chiropractors to evaluate industrial injuries, postdates the promulgation of WAC 296-20-200 and -210. The regulations were adopted under the prior law. The more recent legislative mandate governs.

Also, ITT's reliance on *Brannan*, 104 Wn.2d 55 is misplaced. The superior court in *Brannan*, relying on WAC 296-20-200 and -210, refused to allow a claimant to establish a *permanent partial disability* through the testimony of a chiropractor. *Brannan*, however, is easily distinguishable because it involved a claim for permanent partial disability; it was not a petition to reopen a claim due to *aggravation* of a condition.[7] The *Brannan* ruling is even less persuasive today in light of the legislative amendment of RCW 51.32.112(2).

In sum, there is no case law, statutory law or adminis-

---

[5]This section provides that "[t]he evaluation of bodily impairment must be made by medical experts" and then discusses precisely what the "examining physician" should do after conducting the examination.

[6]This section provides: "Examinations for the medical determination of the extent of permanent bodily impairment shall be made only by physicians currently licensed to practice medicine and surgery."

[7]We also reject ITT Rayonier's implication that *Dobbins* stands for the general proposition that chiropractors cannot testify on the issue of medical causation. In *Dobbins*, the court of appeals affirmed the trial court's refusal to consider a chiropractor's testimony regarding whether a *knee condition* was caused or made symptomatic by the alleged industrial injury. The primary reason for the court's conclusion was that Washington does not include knee injuries within the practice of chiropractic. *Dobbins*, 54 Wn. App. at 791. *Dobbins* cannot be distorted as holding that chiropractors cannot testify about the medical cause of aggravation of a *back condition*.

trative regulation that prohibits a chiropractor from providing "medical" testimony regarding aggravation of an industrial injury, provided the testimony is within the scope of a chiropractic practice. Accordingly, we hold that the trial court did not err in considering chiropractic testimony regarding Loushin's aggravation claim.

## II
Substantial Evidence of Causal Relationship to Industrial Injury.

ITT also claims that the evidence was insufficient to support the trial court's finding that the aggravation of Loushin's back condition was causally related to the industrial injury. We review the superior court's decision "to determine whether the trial court's findings, to which error is assigned, are supported by substantial evidence and whether the conclusions of law flow therefrom." *Grimes v. Lakeside Indus.*, 78 Wn. App. 554, 560, 897 P.2d 431 (1995) (quotation omitted). Substantial evidence means evidence of a quantity sufficient to persuade a fair-minded, rational person of the truth of the declared premise. *Bering v. Share*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050 (1987).

To prove causation, the claimant's medical experts must establish that it is "more probable than not that the industrial injury caused the subsequent disability." *See Zipp v. Seattle Sch. Dist. No. 1*, 36 Wn. App. 598, 601, 675 P.2d 538, *review denied*, 101 Wn.2d 1023 (1984). For an aggravation claim, medical testimony must establish, more probably than not, that the worsening of the condition is causally related to the industrial injury. The Supreme Court in *Sacred Heart Med. Ctr. v. Department of Labor & Indus.*, 92 Wn.2d 631, 636-37, 600 P.2d 1015 (1979), discussed the testimony required to satisfy this element as follows:

It is sufficient if the medical testimony [s]hows the causal connection. If, from the medical testimony given and the facts

and circumstances proven by other evidence, a reasonable person can infer that the causal connection exists, we know of no principle which would forbid the drawing of that inference.

The causal connection can be established with a combination of lay and medical testimony. *Knowles v. Department of Labor & Indus.*, 28 Wn.2d 970, 184 P.2d 591 (1947). In *Knowles*, lay witnesses established that the claimant walked differently before and after his industrial injury. Medical testimony established inflammation, pain, limited flexion, and muscle spasm in the spine and back. The medical expert tied this testimony to the aggravation by showing that the back condition probably resulted from the change in the manner of walking. The lay and expert testimony together established the causal connection between the industrial injury and the aggravation.

Here, it is undisputed that Loushin's condition worsened after his claim was closed.[8] The parties' experts disagreed about whether the worsening of Loushin's back condition was causally related to the 1984 industrial injury. Nonetheless, substantial evidence supports the trial court's finding that "[a] proximate cause of the worsening and increased disability of [Loushin's] medical condition . . . was the industrial injury of April 11, 1984."

Each of the treating doctors opined that Loushin's condition, a product of the degenerative arthritic spinal problems, was proximately caused, in part, by the 1984 industrial injury. Dr. Mittelstaedt, the chiropractor, who saw Loushin for approximately four years, testified that worsening of Loushin's back condition was probably re-

---

[8]The trial court found that "[b]etween the terminal dates of March 10, 1989, and November 22, 1991, the worsening of claimant's [Loushin's] medical condition worsened, as demonstrated by xray [*sic*] findings." ITT Rayonier does not assign error to this finding or directly challenge it in its brief. Thus, the court's finding of aggravation between the terminal dates is a verity on appeal. *See, e.g., State v. Harris*, 106 Wn.2d 784, 790, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987).

lated to the 1984 industrial injury.[9] Mittelstaedt's testimony was within the scope of a chiropractic practice, which includes the diagnosis or analysis of vertebral subluxation complex, articular dysfunction, and musculoskeletal disorders. And the degenerative changes in Loushin's spine (e.g., the narrowing of disc spaces and calcium spurs on the margins of his vertebra) fall within these categories.

Dr. Richardson, a neurologist, saw Loushin numerous times in 1989 and 1990. He testified that Loushin's neck, mid-back or low-back pain conditions "are on a more-probable-than-not basis related to the . . . 1984 injury in the woods while working."

Dr. Dickson is Loushin's family practitioner and saw Loushin from 1989 through 1991. Dr. Dickson, who diagnosed spinal stenosis, degenerative arthritis of the dorsal spine and disc degeneration, testified that the cause of the generalized degenerative arthritis was "most likely post-traumatic, resulting from the 1984 fall down the hill." He testified further that the injury "on a more-probable-than-not basis, was the exacerbating condition for his back complaints."

In contrast to the above opinions, Dr. McCornack and Dr. Grisham, testifying on behalf of ITT, opined that Loushin's condition was not causally related to his 1984 industrial injury. Neither physician is Loushin's treating physician. They merely reviewed Loushin's files and conducted a physical examination.

 The opinions of Loushin's treating medical practi-

---

[9]Dr. Mittelstaedt stated the following in an initial report accompanying the application to reopen the claim:

"In my opinion, the degenerative changes on x-ray are progressing much more rapidly than what would be expected in a person who maintains such a sedentary lifestyle as Mr. Loushin.

". . . .

". . .Mr. Loushin experienced significant spinal injuries as a result of his 1984 injury which aggravated and activated previous spinal degenerative changes. These injuries have acted to accelerated [sic] those degenerative changes resulting [in] increasing levels of pain and disability."

tioners are to be given special consideration by the trier of fact in industrial insurance disputes. *See Hamilton v. Department of Labor & Indus.*, 111 Wn.2d 569, 571, 761 P.2d 618 (1988). The trial court did an admirable job in reviewing the extensive testimony of all the medical experts and according the treating doctors' testimony the special consideration it warranted.

Additionally, the trial court found Dr. McCornack's testimony troubling because he acknowledged that the cause of the arthritis was "unknown." The court noted that McCornack's opinion that the degenerative process was not related to the industrial injury was based on the observation that the degenerative process was occurring throughout Loushin's spine. It discounted McCornack's testimony, however, because the record indicated that Loushin's industrial accident affected Loushin's entire spine. The trial court also noted that Dr. McCornack and Dr. Grisham were not Loushin's treating physicians but served on a multi-specialty panel, which was a "group of physicians that provide independent medical examinations for primarily insurers." In light of medical testimony establishing a causal relationship between Loushin's aggravated condition and the 1984 industrial injury, and the special consideration to be given to the testimony of Loushin's treating doctors, we conclude that substantial evidence supports the trial court's finding of causation.

### III
#### Substantial Evidence that Aggravation Necessitated Treatment.

Finally, ITT asserts that the evidence does not support the trial court's finding that Loushin's aggravated condition required further treatment. ITT reasons that if Loushin's condition did not necessitate medical services, then his entitlement to treatment ended. *See* RCW 51.36.010; *Pybus Steel Co. v. Department of Labor & Indus.*, 12 Wn. App. 436, 530 P.2d 350 (1975). We disagree.

Dr. Richardson, Loushin's family practitioner, testified that the last time he saw Loushin, Loushin needed further treatment for his injury. He described the necessary treatment as "things ranging the gamut of most conservative medical management, things short of surgery including antidepressants, pain management, muscle relaxants [and] . . . some degree of anti-inflammatory drugs . . . ." Additionally, Dr. Mittelstaedt testified that Loushin needed treatment, specifically, chiropractic treatment and a neurological workup. The ITT doctors, McCornack and Grisham, testified that Loushin's condition was not treatable. Again, giving special consideration to the medical opinions of Loushin's treating doctors, Drs. Mittelstaedt and Richardson, sufficient evidence supports the trial court's finding that Loushin needed further treatment. We affirm the trial court in all respects.

BRIDGEWATER and ARMSTRONG, JJ., concur.