219 P.3d 711 (2009)
Terri L. EASTWOOD, Respondent,
v.
DEPARTMENT OF LABOR AND INDUSTRIES, Defendant,
Rite Aid, Appellant.
No. 27297-4-III.
Court of Appeals of Washington, Division 3.
August 18, 2009.
*712 Steven Richard Reinisch, Jerald P. Keene, Reinisch MacKenzie P.C., Portland, OR, Erin Sullivan-Byorick, Reinisch MacKenzie P.C., Seattle, WA, for Appellant.
Patrick K. Stiley, Attorney at Law, Spokane, WA, for Respondent.
KULIK, A.C.J.
¶ 1 RCW 51.32.160(1)(a) provides that workers whose original workers' compensation claims have been closed may seek to reopen their claim for further benefits upon establishing an "aggravation" of the disability. The claimant must show objective medical evidence of worsening. Here, expert opinion was not based on objective findings. Therefore, we reverse the superior court and reinstate the Board of Industrial Insurance Appeals' decision denying a compensable aggravation.

FACTS
¶ 2 The facts and procedural history of this case are undisputed. On December 16, 1999, Terri L. Eastwood filed an application for benefits with the Department of Labor and Industries (Department), alleging that she suffered from a right arm and shoulder condition arising out of her employment at Thrifty Payless, Inc., now owned by Rite Aid. On May 4, 2000, the Department issued an order allowing the claim as an occupational disease.
¶ 3 Ms. Eastwood's original attending physician was Dr. Paula Lantsberger. Dr. Donald Ellingsen, an orthopedist, subsequently assumed the role of attending surgeon for Ms. Eastwood's shoulder condition in March 2000. Dr. Ellingsen performed two arthroscopic surgeries to the shoulderfirst on June 22, 2000, and then, following an order reopening the claim, on October 30, 2002.
¶ 4 As of the most recent closure on March 9, 2004, Ms. Eastwood's shoulder condition had been rated for permanent disability equal to 22 percent of the amputation value of the right arm at or above the deltoid insertion or by disarticulation at the shoulder. This award was based on the examination findings, including range of motion data, contained in a closing report authored by Dr. Lantsberger. That order was never appealed and became final.
¶ 5 On August 15, 2005, Ms. Eastwood filed an application with the Department to reopen her claim, alleging another aggravation of the shoulder condition. The Department determined that Ms. Eastwood's occupational *713 disease had not worsened and denied her application to reopen on October 27, 2005. The Department subsequently affirmed the order denying the reopening on April 27, 2006. Ms. Eastwood appealed the order to the Board of Industrial Insurance Appeals (Board).
¶ 6 The parties relied upon the deposition testimony of several medical experts. Dr. Ellingsen testified about his recommendation for a third surgery to address a worsening of the condition since the March 2004 closing order. Dr. Richard Parker, an internist who examined and treated Ms. Eastwood's nonshoulder conditions in November 2005, after the aggravation application had been denied, endorsed Dr. Ellingsen's conclusions.
¶ 7 Two independent examiners and specialists, Dr. Michael Barnard and Dr. Richard McCollum, testified that objective findings failed to establish a worsening and, indeed, reflected improvement in function.
¶ 8 On May 18, 2007, the Board entered a proposed decision and order, affirming the Department's April 2006 order and concluding that Ms. Eastwood's shoulder condition had not objectively worsened between the two terminal dates, March 9, 2004, and April 27, 2006. On July 24, 2007, the Board entered an order denying Ms. Eastwood's petition for review, thereby making the proposed decision and order the final decision and order of the Board. Ms. Eastwood appealed to the Spokane County Superior Court.
¶ 9 The superior court reversed the Board's decision and held that Ms. Eastwood proved a compensable aggravation of her workers' compensation claim pursuant to RCW 51.32.160. Rite Aid timely appealed to this court, seeking reversal of the superior court's judgment and reinstatement of the agency decision.

ANALYSIS
¶ 10 Objective Medical Evidence Standard. Rite Aid contends that the trial court erred by determining that the medical testimony in the administrative record was sufficient to establish the elements of a worsened condition under the "objective medical evidence" standard set forth in Phillips v. Department of Labor and Industries, 49 Wash.2d 195, 298 P.2d 1117 (1956) and RCW 51.32.160.
¶ 11 Under the Washington Industrial Insurance Act (IIA), Title 51 RCW, a worker may apply to the Department to re-open an earlier workers' compensation claim due to aggravation or worsening of his or her industrial injury. RCW 51.32.160(1)(a).
¶ 12 The first step in seeking review of the Department's decision to deny reopening of the claim is an appeal to the Board. RCW 51.52.060. Decisions of the Board, in turn, may be appealed to superior court. RCW 51.52.110. The findings and decision of the Board are considered prima facie correct until the superior court, by a preponderance of the evidence, finds them incorrect. Dep't of Labor & Indus. v. Moser, 35 Wash.App. 204, 208, 665 P.2d 926 (1983). The superior court reviews the Board's decision de novo, but without any evidence or testimony other than that included in the record filed by the Board. RCW 51.52.110; Grimes v. Lakeside Indus., 78 Wash.App. 554, 560-61, 897 P.2d 431 (1995).
¶ 13 Review in this court is controlled by RCW 51.52.140, which provides, in part, that "[a]ppeal shall lie from the judgment of the superior court as in other civil cases." In reviewing the superior court's decision, the role of the Court of Appeals is to determine whether the court's findings are supported by substantial evidence and whether those findings support the conclusions of law. Du Pont v. Dep't of Labor & Indus., 46 Wash.App. 471, 476-77, 730 P.2d 1345 (1986). Substantial evidence exists if there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the stated premise. Am. Nursery Prods., Inc. v. Indian Wells Orchards, 115 Wash.2d 217, 222, 797 P.2d 477 (1990).
¶ 14 As noted above, RCW 51.32.160(1)(a) allows a claim to be reopened for aggravation of a condition proximately caused by an industrial injury or of an occupationally-related condition. Workers seeking to reopen their claims under this provision must establish the following elements:

*714 (1) The causal relationship between the injury and the subsequent disability must be established by medical testimony.
(2) The claimant must prove by medical testimony, some of it based upon objective symptoms, that an aggravation of the injury resulted in increased disability.
(3) The medical testimony must show that the increased aggravation occurred between the terminal dates[1] of the aggravation period.
(4) A claimant must prove by medical testimony, some of it based upon objective symptoms which existed on or prior to the closing date, that his disability on the date of the closing order was greater than the supervisor found it to be.
Phillips, 49 Wash.2d at 197, 298 P.2d 1117. "The phrase `medical testimony' means testimony by medical experts." Loushin v. ITT Rayonier, 84 Wash.App. 113, 118, 924 P.2d 953 (1996).
¶ 15 Throughout the proceedings, the parties have agreed that Ms. Eastwood must establish the alleged aggravation occurred between the "terminal dates" of March 9, 2004 (the most recent closure) and April 26, 2006 (the date she submitted the instant application for reopening). The primary issue on appeal is whether the expert testimony Ms. Eastwood relied upon to establish a compensable aggravation was legally sufficient under Phillips to prove a worsening of her shoulder condition during that period of time.
¶ 16 To establish the aggravation, Ms. Eastwood relied upon the deposition testimony offered by Dr. Ellingsen and Dr. Parker.
¶ 17 Dr. Ellingsen's Testimony. Dr. Ellingsen, a board-certified orthopedic surgeon, first saw Ms. Eastwood for her shoulder condition in March 2000 and has continued as her attending physician for that condition over the course of seven years of treatment. On June 22, 2000, he performed his first surgery on her right shoulder an arthroscopy and subacromial decompression. He removed the bursitis and scar tissue in the subacromial space and planed off the bones at the tip of the shoulder blade and the end of the collar bone. Dr. Ellingsen treated Ms. Eastwood with various treatment modalities, including shoulder injections and a second surgery in October 2002. She improved for some time after that procedure, resulting in a hiatus of her office visits.
¶ 18 In his deposition, Dr. Ellingsen opined that Ms. Eastwood's accepted right shoulder condition had worsened between March 9, 2004, and April 27, 2006. When counsel for Ms. Eastwood sought to confirm that Dr. Ellingsen's opinion was based on "objective evidence," the doctor testified only that Ms. Eastwood had presented a "very irritable shoulder exam." Certified Appeal Board Record (CABR), Ellingsen Dep. at 8. Thereafter, counsel's examination was limited to a discussion of the doctor's recommendation for surgery. Importantly, however, Dr. Ellingsen did not specify the objective findings or diagnostic criteria by which he defined or diagnosed an "irritable shoulder."
¶ 19 Moreover, Dr. Ellingsen never stated how that diagnostic impression compared to Ms. Eastwood's condition at the time of the first terminal date in 2004, as preserved in Dr. Lantsberger's closing examination findings. Accordingly, his statement that Ms. Eastwood evinced an "irritable shoulder" during an examination in 2006 did not, and could not, suffice to describe a worsening relative to the previous closure in 2004.
¶ 20 On cross-examination, Dr. Ellingsen agreed that Ms. Eastwood's established level of impairment of 22 percent of the arm, as noted in the 2004 closing examination, represented a substantial level of baseline impairment. At that point, the following exchange occurred:
Q. Okay. So when you said that [Ms. Eastwood] had an irritable shoulder examination when you examined her, is that a subjective pain complaint?

*715 A. Well, it's objective too, in that certain positions that we put the arm in elicits a pain response.
Q. But it doesn't really allow you to provide a base to compare, does it, for your closing examination?

A. No.

CABR, Ellingsen Dep. at 12-13 (emphasis added).
¶ 21 Later, Dr. Ellingsen was asked to compare his findings with those of Dr. Lantsberger's closing examination in 2004, since Dr. Lantsberger's findings in that examination had been the basis for the Department's award in its March 9, 2004 closing order. Dr. Ellingsen subsequently confirmed that his own reports contained no documented range of motion findings. He then agreed that without specific measurements, it is difficult to make an objective comparison of worsening, at least with regard to the right shoulder's range of motion.
¶ 22 This testimony confirms that Dr. Ellingsen's opinion purporting to discern a worsening of the claimant's condition between 2004 and 2006 was not based on any comparisons that included an assessment or comparison of objective medical findings over the relative period of time. Even if his reference to shoulder positions that elicited pain in 2006 could be construed as an objective finding, the doctor admitted it provided no base to compare her condition against quantifiable findings or other objective data documented at the time of the previous closure. There is no medical documentation or testimony in the record to support the assumption that Ms. Eastwood experienced pain with movement or positions in 2006 that was in any way new or more pronounced than that produced with similar positions or movement in 2004.
¶ 23 Next, Dr. Ellingsen was questioned about an MRI[2] examination that had been taken of Ms. Eastwood's right shoulder on December 9, 2005. He confirmed that in his report of December 15, 2005, he stated only that the MRI showed evidence of prior surgery but no evidence for full thickness cuff tearing. But he did not testify that the MRI contained any objective findings of worsening of the shoulder condition between March 9, 2004, and April 27, 2006.
¶ 24 Finally, upon further questioning by Ms. Eastwood's counsel, the doctor testified he did not require objective evidence to draw his conclusion that a worsening had occurred:
Q. Do you need any numbers or figures or percentages or diagrams from Dr. Lantsberger to form an opinion as to whether the patient you've been treating for the last three or four years has gotten any worse in the last three or four years?
A. I don't need any because I know her well enough and have seen her for seven years.
CABR, Ellingsen Dep. at 18-19.
¶ 25 Rite Aid argues that "[w]hile Dr. Ellingsen may not have required `any' comparison of quantifiable or objective findings to feel secure in his impression [that Ms. Eastwood's] shoulder condition had worsened and was more disabled in 2006 than it was in 2004, the pertinent statute and case law do require more than a physician's subjective certitude based on nothing more than vague assurances he was familiar with the patient." Br. of Appellant at 12. We agree.
¶ 26 To qualify for reopening of a closed claim for additional workers' compensation benefits, Ms. Eastwood must provide a medical opinion that reflected an actual comparison to the baseline condition at the time of the first terminal date, that is based, at least in part, on objective medical findings. Phillips, 49 Wash.2d at 197, 298 P.2d 1117. "[T]he rule followed by this court is that, to establish a claim for an increase in an award as a result of the aggravation of a prior industrial injury, the burden is on the claimant to produce medical evidence, some of it based on objective findings, to prove that there has been an aggravation of the injury which resulted in increased disability." Moses v. Dep't of Labor & Indus., 44 Wash.2d 511, 517, 268 P.2d 665 (1954) (emphasis added). Dr. Ellingsen's opinion reflected no such comparison and no reliance or incorporation of objective medical findings. Indeed, as Rite Aid aptly points out, he disclaimed any need to do so. Accordingly, Dr. Ellingsen's *716 opinion was not legally sufficient to establish an aggravation.
¶ 27 Dr. Parker's Testimony. Dr. Parker's deposition testimony provided the only other potential medical support for the existence of a compensable aggravation. Dr. Parker is a board-certified physician specializing in general internal medicine. He practices in the same medical group as Ms. Eastwood's former family physician. Dr. Parker assumed Ms. Eastwood's treatment in November 2005, after Ms. Eastwood's surgery and after her reopening application had been denied. As an internist, he treated Ms. Eastwood for hypertension, pulmonary disease, and sleep apnea.
¶ 28 Dr. Parker supported Dr. Ellingsen's conclusion that Ms. Eastwood's shoulder condition had worsened. Dr. Parker had not read the 2005 MRI films or report, but instead relied on Dr. Ellingsen's notes, including notes of the MRI examination, and on Ms. Eastwood's descriptions of her conditions. Dr. Ellingsen's notes referenced calcification on imaging studies. Dr. Parker concluded that was an objective finding, but he did not testify such calcification was not present in 2004, or that it specifically constituted objective evidence of worsening between March 9, 2004, and April 27, 2006.
¶ 29 Dr. Parker admitted that he does not do rating examinations and, in cases involving a rotator cuff tear like Ms. Eastwood's, he generally defers to the opinion and treatment plan of a specialist, such as an orthopedist. Dr. Parker further admitted that he did not report any specific findings on Ms. Eastwood's right shoulder involving range of motion and, in fact, he had not reviewed Dr. Lantsberger's February 11, 2004 closing examination that awarded Ms. Eastwood permanent impairment disability. He also had not reviewed any of Ms. Eastwood's physical therapy evaluations. Dr. Parker admitted that someone with 22 percent permanent partial disability of the right arm likely would have a continually symptomatic arm condition because of the extent of the impairment. Dr. Parker concurred with Dr. Ellingsen's conclusions about worsening of the condition, causation of the worsening, and the need for further treatment.
¶ 30 In its decision, the Board correctly analyzed Dr. Parker's testimony as follows:
Dr. Parker's conclusions concerning objective findings of the MRI did not extend specifically to concluding that accepted occupational disease condition had been a cause of that finding. Dr. Parker's opinions are derivative, being based on Dr. Ellingsen's notes and conclusions and Ms. Eastwood's subjective complaints. If Dr. Ellingsen's findings alone were not sufficient to show objective worsening, then Dr. Parker's derivative conclusions could not do so.
CABR at 33.
¶ 31 However, in reversing the Board, the superior court entered a finding that: "Between March 9, 2004 and April 27, 2006, Ms. Eastwood's right shoulder condition . . . had worsened further. By the fall of 2005, virtually every objective finding of infirmity (previously corrected by surgeries), had returned, and Ms. Eastwood found herself unable to continue working." Clerk's Papers (CP) at 83 (emphasis added). The superior court also found that Ms. Eastwood's physicians, including the orthopedic surgeon, prescribed a third surgery "based upon evaluation of objective findings." CP at 83 (emphasis added). The record contained no medical testimony sufficient to support these findings.
¶ 32 The superior court cited the Washington Supreme Court's decision in Wilber v. Department of Labor and Industries, 61 Wash.2d 439, 378 P.2d 684 (1963) and reasoned that it applies to this case. In Wilber, the court clarified the nature of the evidence required to satisfy the "objective" medical evidence standard set forth in Phillips and related cases. Id. at 446-47, 378 P.2d 684. The court held that medical evidence offered to establish an aggravation must reflect the physician's reliance, at least in part, on clinical findings of worsened symptoms that are verified by means other than facial acceptance of the injured worker's subjective complaints. Id. at 446, 378 P.2d 684. Shortly after deciding Wilber, the Supreme Court reiterated in Dinnis v. Department of Labor and Industries, 67 Wash.2d 654, 656, 409 P.2d 477 (1965) that in an aggravation case, *717 "the burden of proving a claimed disability to be greater on the last terminal date than on the first terminal date is upon the claimant; and to prevail he must produce medical evidence to that effect based, at least in part, upon objective findings of a physician."
¶ 33 Here, Dr. Ellingsen did not identify objective medical symptoms capable of providing the necessary comparison of Ms. Eastwood's shoulder condition at the relevant terminal dates. Rather, counsel for Ms. Eastwood repeatedly emphasized that Dr. Ellingsen's opinion was based on the doctor's opportunity to observe the nature of her shoulder condition firsthand during two surgeries. Specifically, Ms. Eastwood's trial brief urges deference to the "opinion of a surgeon who has twice been inside a patient's shoulder." CP at 21.
¶ 34 Dr. Ellingsen, however, never articulated his reliance on such surgical observations in his testimony nor did he identify them as the basis for discerning a worsening. Rite Aid points out that counsel's arguments in this regard were not evidence, and a court may not supply findings or a rationale that the expert witness did not articulate in the record. Phillips, 49 Wash.2d at 197, 298 P.2d 1117. Moreover, Dr. Ellingsen's own testimony indicated his earlier surgeries entailed removal of part of her shoulder blade and collarbone, scar tissue, and bursitis. Significantly, his testimony included no reference to the removal of calcification in surgeries prior to that recommended in 2006.
¶ 35 Next, the superior court cited Dr. Parker's secondhand reference to calcification that was described in Dr. Ellingsen's notes summarizing the MRI reports in 2005. Importantly, Dr. Parker's testimony does not indicate whether calcification existed on the first terminal date in 2004. As the Board appropriately noted in its decision, the record does not show that the medical experts engaged in any objectively-based comparative analysis of calcification at the relevant points in time. To the contrary, the Board correctly found they failed to do so:
Dr. Parker had not read the 2005 MRI films or report but instead relied on Dr. Ellingsen's notes, including notes of the MRI scan, and on imaging studies. Dr. Parker concluded that was an objective finding, but he did not testify such calcification was not present in 2004 or that it specifically constituted objective evidence of worsening between March 9, 2004, and April 27, 2006.
CABR at 31.
¶ 36 The superior court made no findings of fact contrary to the Board's findings regarding Dr. Parker's testimony. Dr. Parker's reference to MRI examinations revealing the mere existence of calcification was not sufficient to constitute objective medical evidence in support of an aggravation relative to the shoulder condition in 2004.
¶ 37 Because neither of Ms. Eastwood's experts supplied opinions reflecting comparisons that were based upon objective medical evidence of a worsening pursuant to Phillips, the superior court erred by finding that she established a compensable aggravation within the meaning of RCW 51.32.160.
¶ 38 We reverse the superior court and reinstate the decision of the Board of Industrial Insurance Appeals. Accordingly, we reverse the award of attorney fees.
WE CONCUR: SWEENEY and KORSMO, JJ.
NOTES
[1] The second terminal date is the date of the most recent closure or denial of an application to reopen a claim for aggravation; the first terminal date is the date of the last previous closure or denial of such an application. Grimes, 78 Wash. App. at 561, 897 P.2d 431.
[2] Magnetic resonance imaging.